Nathan BROCHSTEIN and Manuel Brochstein,* doing business as Church Avenue Poultry, Plaintiffs-Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 849, Docket 71–1071.

United States Court of Appeals, Second Circuit.

Argued June 28, 1971.

Decided Sept. 21, 1971.

---

* Although on the previous appeal plaintiffs' name was spelled with a "k" rather than an "h", the record discloses that the proper spelling of plaintiffs' name is as it now appears in the caption.

Jacob W. Friedman, New York City (Sheldon & Tarnoff, Howard Sheldon, Jacob Aschkenasy, New York City, on the brief), for plaintiffs-appellants.

Charles G. Pillon, New York City (Whalen, O'Neill & Pillon, New York City, on the brief), for defendant-appellee.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

FEINBERG, Circuit Judge:

In the prior appeal in this case, Brockstein v. Nationwide Mutual Insurance Co., 417 F.2d 703 (2d Cir. 1969), with which familiarity will be assumed, we remanded to the district court to determine again whether the Brochsteins, plaintiffs-insureds, were entitled to recover damages from their insurer because of its failure to settle an action brought against plaintiffs by the administratrix of John F. Kiely (Kiely). As a result of that mistake in judgment, Kiely recovered $95,000 against the Brochsteins, $45,000 more than the amount of the policy provided by defendant. The Brochsteins' excess liability to Kiely was ultimately settled for $25,000, for which they sued defendant-insurer. In our earlier decision, we held, among other things, that the bad faith of an insurer in refusing to settle a claim against the insured

> may be evidenced by the failure of the insurer even to mention to the insured his opportunity to make a relatively small contribution to avoid a large exposure.

417 F.2d at 709. We sought further findings as to

> (1) precisely what the Brocksteins were told or knew regarding the amount needed to settle the *Kiely* action, the amount the insurer was willing to contribute, and what their potential personal liability was, and (2) what they were then willing to contribute themselves. [Footnote omitted.]

and directed the trial court again to

> decide upon the entire record whether Nationwide acted in bad faith under the principles set forth herein.

On remand, Judge Dooling made extensive further findings of fact, including the key finding that:

> The inference of constructive bad faith that might be drawn in some circumstances from the failure of the insurer to mention to the insured his opportunity to make a contribution to the settlement in order to avert the risk of a verdict in excess of the policy limit is insufficient on the facts of the present case to establish bad faith in fact.

The judge again found for defendant-insurer, and this appeal followed.

Appellants claim that the judge did not follow our directions and that defendant acted in bad faith as a matter of law. As to the former contention, Judge Dooling reopened the record, as our opinion authorized, heard testimony from five witnesses, including one of the plaintiffs and the lawyer who defended the *Kiely* action against them, and carefully reconsidered the question of the insurer's bad faith in refusing to settle that action. There is no doubt at all in our minds that the judge attempted to and did comply with our directions in all respects.

Appellants' alternative argument is that, in any event, the findings of the judge on remand required a conclusion as a matter of law that the insurer acted in bad faith. Appellants base their claim principally on the findings that plaintiffs had cash on hand sufficient to make a contribution to the settlement of even $10,000, but were not requested to do so and were not told that a relatively small contribution on their part would avoid a large exposure or that such a course was possible.

The judge did make the findings to which plaintiffs refer. But he also characterized as "necessarily hypothetical and not adequate as the basis for a finding" the testimony of one of the plaintiffs that he would have contributed from $5,000 to $12,500 to a settlement if defendant had advised him he could. The judge also found that O'Neill (trial counsel for the Brochsteins and the insurer) did advise the Brochsteins that the outcome was not predictable, that the verdict could be in excess of the policy limits, what the "posture of the settlement discussions [were] as they progressed during trial, from which the difference between offer and demand was evident," and what

amount the insurer was willing to offer. The judge also found that the Brochsteins "understood that [if a verdict were rendered in excess of the policy limit] in such case the liability would be their firm's." Finally, the judge pointed out that if there had been a negotiation between the Brochsteins, the insurer and the Kiely interests, all sorts of eventualities might have occurred; *e. g.*, Kiely could have increased the demand upon learning that further sums were available or the Brochsteins might not have been willing to make a substantial contribution unless the insurer made a similar increase.

As we pointed out in our earlier opinion, 417 F.2d at 705, the ultimate issue before the judge was whether the insurance company dealt fairly and adequately with its insured under New York law.[1] A finding of good faith or lack of bad faith is merely a shorthand way of resolving the series of issues embodied in that concept. When the trier of fact is convinced that under the applicable law the insurer on all the evidence did deal properly with its insured, we are not disposed to overrule that judgment. It is true that the insurer made no mention of the possibility that the Brochsteins might make a contribution; the insurer apparently thought that doing so would have been improper. As we noted in the first appeal, 417 F.2d at 708–709, its concern at that time is understandable. But now that we have spoken out on the subject, insurers are put on notice and should act accordingly in the future. This means that they must tread the narrow and difficult line between merely informing the insured in a proper case "of his chance to make a contribution in order to settle the case" and insisting "upon a contribution as the price of settlement." 417 F.2d at 709. Insurers must be particularly careful not to do the latter or to use the pos-

---

1. We note that some jurisdictions apparently impose a stricter standard of liability upon the insurer than New York does. See generally Note, Recent Developments in the Excess Judgment Suit, 36 Bklyn.L.Rev. 464 (1970); 64 De Paul L.Rev. 604 (1970).

sibility of contribution from the insured as a means of evading their own responsibilities.

■ We do not suggest that this is an open and shut case or that the problem it illumines can be dealt with easily. The contrary is the fact. As Judge Dooling pointed out:

> [T]he limited coverage situation becomes flatly unsatisfactory in the final settlement stages if the insured has not retained counsel to represent him in his role as self-insurer on the excess risk.

We agree and point out as we did before, 417 F.2d at 709 n. 10, that the insurer's lawyer at that stage is in a "delicate" situation.[2] For the future, we suggest that an insurer must be careful to give an insured full and accurate information as to settlement possibilities not only in the early, but also in the late, stages of negotiation, including the advice that to the extent that there is an uninsured interest, the insured has the option of being represented by separate counsel. But on this record and after the careful sifting of the evidence by the district judge, we should reverse his finding of no bad faith only if the rule is that failure to notify an insured of his opportunity to contribute always requires a finding of bad faith. But this court did not go that far in our prior opinion or in the cases upon which we relied, e. g., Young v. American Casualty Co., 416 F.2d 906 (2d Cir. 1969); Brown v. United States Fidelity & Guaranty Co., 314 F.2d 675 (2d Cir. 1963). And we decline to adopt such a rule now.

At oral argument appellants called to our attention two recent decisions which cite our prior opinion. But both support the view that the decision here is essentially for the trier of fact. In Ging v. American Liberty Insurance Co., 423 F.2d 115 (5th Cir. 1970), summary judgment for the insurer was reversed

so that a trial could be had on the issue of good faith. In Board of Education of Borough of Chatham v. Lumbermens Mutual Casualty Co., 419 F.2d 837 (3d Cir. 1969), the trier of fact found against the insurance company, and the appellate court affirmed.

Judgment affirmed.

MOORE, Circuit Judge (dissenting):

Because in my opinion the result reached by the majority is quite contrary to our previous statement on the first appeal of the principles applicable to this case, Brockstein v. Nationwide Mutual Insurance Company, 417 F.2d 703 (1969) and the facts hitherto found which I believe to be determinative, I must dissent.

There is little need to search beyond our earlier opinion and Judge Dooling's findings on remand. The background of fact has been adequately stated. Suffice it to say that the Brochsteins held a $50,000 accident insurance policy issued by Nationwide. An accident occurred and they were sued in an action referred to as the *Kiely* case. At this point we must consider the only operative facts as found by this court.

"That the *Kiely* action could have been—and almost was—settled for less than $50,000 is clear."

Judge Dooling (on the first trial) found that the early demand of Lipsig (Kiely's lawyer) was for $100,000 "but that well before trial, Lipsig told O'Neill (Nationwide's lawyer) * * * that if the policy was for $50,000 [which it was], Lipsig would recommend settlement for $45,000, that this offer was repeated by Lipsig at a later pre-trial conference and at trial, and finally, that during the trial the presiding judge told O'Neill that the case could be settled for $40,000." 417 F.2d at 706. Thus the proof is incontestable that the case could have been settled within the policy lim-

2. *Cf.* Lysick v. Walcom, 258 Cal.App.2d 136, 65 Cal.Rptr. 406 (1968), discussed in Sevier, Beyond the "Bad Faith" Rule: New Excess Liability for Insurance Carriers and Their Attorneys, Proceedings, ABA Section of Insurance, Negligence, and Compensation Law 391, 396–99 (1969).

its and the Brochsteins completely relieved of the liability from which they were protected under the policy which they had purchased for this purpose. Nationwide failed to make the available settlement. Instead it proceeded to trial and a $95,000 verdict was returned. As a result the Brochsteins instead of being fully protected found themselves subjected to a $45,000 excess policy judgment which they ultimately settled for $25,000. Upon these facts and the law, Nationwide's liability would appear to have been clear. How then does a contrary result occur? This court's previous opinion points to the answer. It spoke in terms of "bad faith", failure of Nationwide to advise the Brochsteins of their opportunity to make a contribution to a settlement (a factor wholly irrelevant to the issue) and whether the Brochsteins would have made a contribution to a settlement even if so advised by Nationwide of any such possibility (equally irrelevant). However, this court remanded the case to Judge Dooling to make findings (and on further testimony if necessary) as to what was told to the Brochsteins by Nationwide relating to the amount needed to settle the *Kiely* action, the amount Nationwide would contribute and the Brochsteins' potential liability—all to determine whether Nationwide acted "in bad faith."

In my opinion Judge Dooling's further findings made at our behest do not meet the controlling legal issues. Thus he finds (# 86, p. 306a) that "There is no evidence that there was actual bad faith on Nationwide's part (acting through O'Neill or other representative than O'Neill) * * *." Again in Finding # 87 he stresses contribution and failure by Nationwide to mention this possibility to the Brochsteins as leading to an "inference of constructive bad faith." Herein lies the error in the approach of Judge Dooling and the majority opinion. It is unnecessary under the law to find "bad faith" as evidenced by facts showing evil motive or purpose.

In Young v. American Casualty Company of Reading, Pa., 416 F.2d 906, at page 910 (2 Cir., 1969), Judge Lumbard (then Chief Judge) said that "a finding of bad faith on the part of the insurer may be based on such factors as these: * * * (2) The refusal of the insurer to accept a settlement within the limits of the policy * * *."

Lack of any necessity to couch "bad faith" in terms of evil purpose appears from Judge Lumbard's further comments that "in the usual case, to establish bad faith by the insurer an insured should demonstrate that the claim could have been settled within the policy limits, * * *." Here the majority says that in this case this fact (settlement within the limits of the policy) is "clear." Judge Lumbard continued: "Where an insurer receives an offer of settlement in excess of the coverage of its policy it acts in bad faith if it fails to make an attempt * * * (to secure a reduction) and * * * (fails to advise the insured of settlement opportunities) * * *." An *a fortiori* case is presented where, as here, the basic fact is conceded that a settlement could have been effected within the limits of the policy.

Even in Judge Wyatt's dissenting opinion in *Young*, it was stated that "the core of the actionable wrong is the failure or refusal of the insurance carrier to settle when settlement within the policy limit *could have been*, and should have been, effected." *Young*, p. 912. The "essential element of the case for the insured [was] that the claim could have been settled within the policy limit." Again here that fact is not disputed.

A somewhat similar situation arose in Brown v. United States Fidelity and Casualty Company, 314 F.2d 675 (2d Cir. 1963) in which this court reversed the dismissal of a complaint in an action by an insured against an insurance company for failure to settle. In that opinion Judge Kaufman writing for the court said that "we are convinced that the good-faith settlement standard controls

in New York in cases of an assured's personal liability resulting from the insurer's failure to settle within policy limits." *Brown* at 678.

If "bad faith may be evidenced by the failure of the insurer even to mention to the insured his opportunity to make a relatively small contribution to avoid a large exposure," as held in *Brockstein, supra,* 417 F.2d at 709, how much the more is it evidenced by the established fact that a settlement could have been effected within the policy limits—not requiring even a small contribution.

Since the opinion of the majority to me seems quite contrary to our previous decisions and to the views of five judges of this court, I would reverse the judgment dismissing the action on the merits.

Lumbard and J. Joseph Smith, Circuit Judges, dissented and filed opinions; Oakes, Circuit Judge, concurred and filed opinion.