# Claude W. English v. Rodney Myers, d/b/a Benway's North End Taxi and Peter Mulholland

[454 A.2d 251]

No. 486-81

Present: Billings, Hill, Underwood and Peck, JJ., and
Larrow, J. (Ret.), Specially Assigned

Opinion Filed November 2, 1982

146

*James M. Farrell,* Burlington, for Plaintiff-Appellee.

*Frederick G. Cleveland* and *Gloria K. Rice* of *McKee, Giuliani & Cleveland,* Montpelier, for Defendants-Appellants.

**Larrow, J.** (Ret.), Specially Assigned. Plaintiff English was injured on the morning of July 24, 1976, when hit by a taxi while crossing Church Street in Burlington. He sued the conceded owner and employer, Rodney Myers, d/b/a Benway's Taxi, and Peter Mulholland, the conceded employee and operator, for $15,000. This ad damnum was amended at trial to $300,000, and a $45,000 plaintiff's verdict resulted. Both defendants seasonably filed a motion for new trial or remittitur and, subsequent to its denial, have appealed.

Briefly stated, the claimed errors below are (1) excessive damages, (2) defects in the verdict and judgment, (3) failure

to apportion damages between the two defendants, (4) refusal to permit an inquiry into possible juror misconduct, and (5) failure to give a requested charge relating to pedestrians crossing a street. We consider those claims in that order.

### Amount of damages.

Viewed in the light most favorable to plaintiff, the evidence indicates that he was 66 years of age at the time of the accident, about five years before actual trial. He was a retired industrial assembler, who moved from Vermont to Florida in 1974. Visiting in Vermont, he was about to leave for Florida when the accident occurred. He was thrown by the impact some 10–15 feet through the air, landing on the pavement. After a brief "blackout," he was able to crawl to the curb. He was unable to walk without help, and was hospitalized two days. His left leg was badly swollen, he had bruises on both legs, with painful bruises and bumps on his left arm as well, and a small injury to his right knee. He had "aches and pains all over," and had to delay his Florida trip several weeks. More than four years after the accident, his left arm, shoulder and neck were still painful, as were his left leg and hip. His sleep was affected. Many of his normal activities had been "neglected" since the accident. No claim of permanent injury had medical support, and this issue was not submitted to the jury. Because of his retirement, no lost wages are involved. His ambulance and hospital expenses were just under $300.00. Much of his care was supplied by his wife, a retired registered nurse. He was unable to attend trial, and his deposition was used, as was that of his Florida doctor.

In ruling upon defendants' post-trial motion, the trial court indicated that in its judgment the verdict "was more than it ought to have been" but that it was unable to conclude that perverted judgment, accident, gross mistake, passion, prejudice or other misguidance was involved. This is, in our view, a succinct analysis of the point. Cf. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 157, 130 A. 758, 789 (1925). It correctly indicates the general rule that size of the verdict alone does not indicate passion or prejudice, and that absent such factors, we will not interfere with the trial court's discretion. *Larmay* v. *VanEtten*, 129 Vt. 368, 374, 278 A.2d 736, 740

(1971). The verdict was indeed somewhat high, but we cannot say that it was unconscionably so as a matter of law, particularly in light of the almost five years intervening between accident and verdict. No error appears with respect to this claim. We are in the field of unliquidated damages, where judgments may vary widely and yet be within permissible range. Neither the jury nor the court abused their discretion. The award is neither "grossly" nor "entirely" excessive, so as to warrant action by us. *Sunday* v. *Stratton Corp.*, 136 Vt. 293, 309, 390 A.2d 398, 407 (1978).

## Defects in the verdict and judgment.

Defendants brief a contention that the verdict and judgment below were so vague and confusing as to be void, requiring reversal and remand for a new trial. They base this claim upon the fact that the standard printed jury form which was employed used, without alteration, the word "defendant" in the singular, as did the judgment for the plaintiff which was subsequently entered. Several considerations militate against their contention.

■■ In the first place, we have many times made clear that issues not raised below will not be considered for the first time on appeal. *Pope* v. *Town of Windsor*, 140 Vt. 283, 286, 438 A.2d 388, 390 (1981). The issue was not raised at the time the verdict was rendered, in the subsequent motion for new trial, or at any other time. It is, therefore, waived.

■■ Beyond this, even if there were error of a magnitude more than clerical, which we do not believe, it would be harmless. It has been amply clear in this jurisdiction, since the careful review of the point by then Justice Hulburd in *Daniels* v. *Parker*, 119 Vt. 348, 126 A.2d 85 (1956), that under the doctrine of respondeat superior the master stands as surety for damages caused by the servant in the course of his employment, with coincidental rather than alternative liability. Joinder of the two as parties defendant is permitted and election of remedies has no application. This is, of course, subject to the prohibition against double recovery. The relationship was pleaded by the plaintiff and admitted in the pleadings of the defendants.

Moreover, counsel's present contention that there was a factual basis for holding the defendant employer independently of the doctrine of respondeat superior is without support in the record. It is also, we would point out, inconsistent with representation of both defendants by the same counsel. A lawyer should never represent in litigation multiple clients with differing interests. Code of Professional Responsibility, EC 5-15.

In this case, the interests of the two defendants are not shown to be diverse. As pointed out, the liability of the employer derives from the relationship and from the liability of the employee. True it is that there was testimony to the effect that the taxi involved in the accident had some carburetor trouble which interfered with the smoothness of its operation, and that the defendant employer, advised of this, had failed to take appropriate measures to remedy the condition. But the basis of recovery in this action was clearly the negligence of the defendant operator, Mulholland, in turning left into a pedestrian crossing and failing to see and avoid the plaintiff, who had completed about three-quarters of his crossing the intersecting street. Under the circumstances of this accident, we are unable to perceive any causative effect attributable to a malfunctioning carburetor, even if the malfunction were negligence on the part of the employer. The negligence here the basis of recovery was the total failure of the driver to observe, and his proceeding into a crosswalk for pedestrians in spite of such lack of observation.

■ The use of the word "defendant" in the singular in the verdict and judgment cannot be prejudicial to either defendant in any respect. Their liabilities to the plaintiff are on the same basis, and are coextensive in amount. They were either both liable, or both not liable. While we would urge future diligence in the preparation of judgments and verdicts, we are convinced that the error here is one of form only, and clerical in nature. We will make the necessary correction in our mandate.

*Failure to apportion damages between defendants.*

The defendants brief the proposition that the jury's verdict, as rendered, is fatally defective for failure to apportion dam-

ages between plaintiff and defendants, and for failure to apportion damages between the two defendants. Each such apportionment they claim to be required by 12 V.S.A. § 1036.

Again, the simple answer to these contentions is that they were not raised below and are therefore waived. *Pope* v. *Town of Windsor, supra.*

But, even if raised below, the contentions would be without merit here. The defendants admit that the court's charge correctly and adequately covered the points they have raised. They assert, however, that the law *requires* the submission of the interrogatories contemplated by V.R.C.P. 49 (b). Such is not the case; the language of the rule is permissive. And 12 V.S.A. § 1036, by its terms, requires a *general* verdict. In comparative negligence cases, the use of special interrogatories is indeed to be commended, but their omission is not reversible error when the charge is correct. We cannot assume, as the defendants would have us do, that the jury failed to follow the instructions as given.

Moreover, as to apportionment between the individual defendants, we do not require performance of a useless act. The purpose of the statutory requirement is clearly stated; it is to establish "the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed." 12 V.S.A. § 1036. As we have already pointed out, under respondeat superior the negligence of the servant becomes that of the master; they are identical. There is no "ratio" between them to be established by verdict. The legislature has not, as defendants argue, rejected the concept of joint and several liability among *co-defendants* in favor of apportioning recovery in relation to the relative negligence of the parties. The apportionment required is among *joint tortfeasors,* and that is not the basis for recovery in the instant action. The assumption implicit in the argument, that the two terms may be equated, is simply not the fact.

*Refusal to permit inquiry into possible jury misconduct.*

This claim of error arises from somewhat unique circumstances. There were two trials begun in this matter; the sec-

ond, with a different jury chosen from the same general panel, immediately followed the first. Early in the first trial a witness made a statement which could be construed as indicating the presence of liability insurance. Defendants' counsel, somewhat belatedly, moved for a mistrial. The trial court, evidently motivated largely by the fact that the general panel was still available, granted the motion, drew another jury, and commenced the trial de novo. From this circumstance, and the fact that there was some commingling of the first jury and the general panel when the second jury was drawn, the defendants argue that, in light of the size of the verdict, the court should have instituted an inquiry into possible jury misconduct. This argument is made in spite of the admission contained in their post-trial motion that there was no extrinsic evidence of jury misconduct, and that jury misconduct was not alleged.

It is apparent from the record that the commingling complained of occurred before the second trial commenced, was apparent to counsel, but was not raised until the post-trial motions were filed. If grounds for mistrial were present, that was the time for the appropriate motion, and not after verdict.

Moreover, the burden is upon defendants to show the existence of circumstances capable of prejudicing the deliberative function of the jury. *State* v. *Brisson,* 124 Vt. 211, 215, 201 A.2d 881, 883 (1964). This they have not done. The sterile vacuum with which we have sought to conceal from the jury the existence of liability insurance does not extend to cases where such insurance coverage is mandated by statute. The statute here gives a direct action in such cases, even though plaintiff here did not avail himself of it. 23 V.S.A. §§ 841, 842. And the existence of insurance coverage in such cases does not have the prejudicial effect attributed to cases where it is optional.

> The public has an interest in the contract and the injured person has been given a direct right of action against the insurer. The existence of insurance is not prejudicial in the legal sense to the insured or his surety. It is the plain requirement of the law. And we find no prejudice in the existence of a legal relationship which the public law contemplates and demands.

*Ploesser* v. *Burlington Rapid Transit Co.,* 121 Vt. 133, 137–38, 149 A.2d 728, 731 (1959).

█ Far from being injured by denial of their post-trial motions based upon possible knowledge of insurance coverage, defendants received more than they were entitled to with the granting of the first mistrial. Not even the possibility of jury misconduct is made to appear.

### Failure to charge.

Defendants seasonably requested, and the court did not give, a charge based directly upon the language of 23 V.S.A. § 1051(b). They seasonably excepted to this omission.

23 V.S.A. § 1051(b) reads as follows:

(b) No pedestrian may suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for a driver to yield.

█ The refusal to so charge was completely warranted under the circumstances of this case. Three elements, not merely one, were completely lacking in the evidence. There was no testimony of any "sudden" departure from the curb by the plaintiff. The defendant driver never saw plaintiff before the impact, nor did other witnesses present. The plaintiff testified to a normal gait. And it was undisputed that he was about three-quarters of the way across Church Street when hit. Nor did he go into the "path" of defendants' taxi. That vehicle was going east on Bank Street, stopped, and then turned left into *plaintiff's* path. Nor was it, on the evidence, "impossible" for the driver to yield. He had already stopped, and had only to *remain* stopped while plaintiff completed his crossing. Although correct as an abstract statement of the law, the requested charge had no application to the case at bar, and was properly omitted.

*The judgment order below is corrected to read "defendants" in each instance where the word "defendant" appears, and as so corrected is affirmed.*