## Rodney Myers d/b/a Benway's North End Taxi v. Ambassador Insurance Co., Inc.

[508 A.2d 689]

No. 83-626

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.***

Opinion Filed February 7, 1986

---

* Justice Hayes sat for the argument in this case but did not participate in the decision.

*Latham, Eastman, Schweyer & Tetzlaff*, Burlington, for Plaintiff-Appellant.

*William W. Pearson* of *Downs Rachlin & Martin*, South Burlington, for Defendant-Appellee.

**Allen, C.J.** The plaintiff (insured) appeals from the dismissal of his complaint against the defendant (insurer) in which he seeks the amount he paid to satisfy a judgment rendered against him which was greater than the monetary limits of his liability insurance coverage, together with interest, costs and attorney's fees.

The insured contends that the insurer acted in bad faith as a matter of law by refusing to settle the underlying lawsuit within the limit of his policy and by not advising him of matters critical to his exposure, thereby depriving him of the opportunity to protect his uninsured interests. The trial court concluded that there was insufficient evidence to support a showing of bad faith and entered judgment for the defendant. We reverse and remand.

The insured was the owner of a number of taxicabs. One of the cabs struck and injured a pedestrian, who then instituted a negligence action against the driver of the cab and the insured. The insured gave timely notice of the accident and lawsuit to the insurer, which retained an attorney to represent both the insured and the driver.

The insured had contracted with the insurer for liability coverage with limits of $10,000 for bodily injury to any one person. The ad damnum of the pedestrian's original complaint was in the amount of $15,000, and the attorney retained by the insurer to defend that lawsuit sent the insured a letter advising him that the "claim" exceeded the coverage. This letter informed the insured that he had potential exposure in excess of the policy's coverage, and that he might wish to consider hiring outside counsel to protect his uninsured interest. The insured decided not to hire another attorney to protect his interests based on his determination that "it simply was not worth it," and that the chances were "slim" that a jury verdict would be as high as $15,000.

The attorney investigated the claim and conducted discovery to determine its value. Settlement negotiations were entered into, hovering between $2,500 and $3,500 until shortly before trial, when the plaintiff's demand was raised to $9,000. Immediately prior to trial, the plaintiff moved to amend his complaint to raise the ad damnum to $300,000. The motion was granted; trial ensued and the jury returned a verdict of $45,000. An appeal was taken, and this Court affirmed the jury verdict and judgment against the insured. *English* v. *Myers*, 142 Vt. 144, 454 A.2d 251 (1982). The insurer paid the policy limit plus interest on that amount, and the insured paid the sum of $36,966.62 to satisfy the

judgment. The insured now seeks to recover the amount of his excess payment, along with interest, costs and attorney's fees.

■ The legal principles governing a claim of insurer bad faith arise out of the insurance company's control of the settlement of a claim brought against the insured. Under the policy provisions, the insured surrenders to the insurer the complete control and management of the lawsuit up to the limit of the policy coverage. *Johnson* v. *Hardware Mutual Casualty Co.*, 109 Vt. 481, 490, 1 A.2d 817, 820 (1938). " 'Since the company . . . has the power, through the control of settlement, to adversely affect the insured's interests, it must necessarily bear a legal responsibility for the proper exercise of that power.' " *Brown* v. *United States Fidelity & Guaranty Co.*, 314 F.2d 675, 678 (2d Cir. 1963) (quoting *Harris* v. *Standard Accident & Insurance Co.*, 191 F. Supp. 538, 540 (S.D.N.Y.), *rev'd on other grounds*, 297 F.2d 627 (2d Cir. 1961), *cert. denied*, 369 U.S. 843 (1962)).

■ A conflict of interest is inherent in the insurer's control of settlement when, as in this case, there is potential exposure in excess of the policy limits. A settlement demand within the policy limits highlights that conflict, inasmuch as it will be in the insured's interest for that demand to be met. Such a settlement is not necessarily in the insurer's best interest, however, for by going to trial the insurer might be able to avoid liability altogether, or obtain a judgment for an amount less than the demand. 14 G. Couch on Insurance 2d § 51:132 (rev. ed. 1982).

■ In *Johnson, supra*, 109 Vt. at 490-91, 1 A.2d at 820, this Court held that the insurer's legal duty is that of a fiduciary. When investigating and considering a settlement offer, the insurer must in good faith take into account the interests of the insured, and will be held liable for a judgment in excess of the policy limits if it intentionally disregarded "the financial interests of [the insured] in the hope of escaping the full responsibility imposed upon it by its policy."[1] *Id.* at 491, 1 A.2d at 820. Good or

---

[1] The insured in this action alleged "bad faith" on the part of the insurer in his original complaint. After the close of the evidence the insured attempted to amend his complaint to allege that the insurer was negligent. Counsel for the insurer objected, and the trial court denied the motion as being surplusage. On appeal, the insured urges review of the insurer's conduct against a negligence standard. While noting that "[m]uch ink has been spilled in an effort to define and to distinguish the rule of negligence from the rule of bad faith," *Brown, supra*, 314 F.2d at 677, it is unnecessary to consider this question because the

bad faith is a state of mind, *Brown, supra,* 314 F.2d at 679, provable by circumstantial as well as direct evidence. *Johnson, supra,* 109 Vt. at 494, 1 A.2d at 822.

■ The insurer is responsible for the acts of its agents, including the attorney retained by the insurer to represent the insured in the underlying action. They are held to the same standard of good faith in their dealings as their principal. *Smoot* v. *State Farm Mutual Automobile Insurance Co.,* 299 F.2d 525, 530 (5th Cir. 1962); *Johnson* v. *Hardware Mutual Casualty Co.,* 108 Vt. 269, 286, 187 A. 788, 796 (1936).

■ The insurer's fiduciary duty to act in good faith when handling a claim against the insured obligates it to take the insured's interests into account. The company must diligently investigate the facts and the risks involved in the claim, and should rely only upon persons reasonably qualified to make such an assessment. If demand for settlement is made, the insurer must honestly assess its validity based on a determination of the risks involved.[2] See *Brown, supra,* 314 F.2d at 679; *Davy* v. *Public National Insurance Co.,* 181 Cal. App. 2d 387, 395-96, 5 Cal. Rptr. 488, 492 (1960). In addition, and more pertinent to this case, the insurer must fully inform the insured of the results of its assessment of the risks, including any potential excess liability, and convey any demands for settlement which have been made. "[T]he insurer 'must be careful to give its insured full and accurate information as to settlement possibilities,'" *Kooyman* v. *Farm Bureau Mutual Insurance Co.,* 315 N.W.2d 30, 36 (Iowa 1982) (quoting 7C J. Appleman, Insurance Law & Practice § 4712, at 487 (1979)), for full disclosure allows the insured to assess whether he should move to protect his interests. *Davy, supra,* 181 Cal. App. 2d at 396, 5 Cal. Rptr. at 492.

> An insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him.

---

insurer's conduct is culpable when viewed in the light of the existing bad faith standard.

[2] Because of its focus on the lack of communication between the insurer and the insured, the opinion does not discuss in detail the criteria an insurer should use in assessing a settlement offer.

*Martin* v. *Hartford Accident & Indemnity Co.*, 228 Cal. App. 2d 178, 184, 39 Cal. Rptr. 342, 346 (1964).

The insurer's duty to protect the insured is ongoing, and the insurer must inform the insured of significant developments as they arise. See *Brochstein* v. *Nationwide Mutual Insurance Co.*, 448 F.2d 987, 990 (2d Cir. 1971); *Martin, supra*, 228 Cal. App. 2d at 185, 39 Cal. Rptr. at 347; *Kooyman, supra*, 315 N.W.2d at 36.

The principal issue in this appeal is whether the insurer acted in bad faith when it failed to inform the insured of the existence of settlement demands, the status of negotiations and the raising of the ad damnum just prior to trial, and neglected to provide the insured an opportunity to participate in the decision concerning his presence at trial.

The question of whether an insurer acts in bad faith depends on the specific facts of each case, and is one for the trier of fact. *Brown, supra*, 314 F.2d at 680. Nonetheless, "such determination becomes a question of law when from uncontroverted evidence a reasonable man following the law can draw but one conclusion on the issue." *Hodges* v. *Standard Accident Insurance Co.*, 198 Cal. App. 2d 564, 574, 18 Cal. Rptr. 17, 23 (1962). In this case, even when the evidence is viewed in the light most favorable to the insurer as the prevailing party, and the effect of any modifying evidence is excluded, *Quechee Lakes Corp.* v. *Terrosi*, 141 Vt. 547, 552, 451 A.2d 1080, 1083 (1982), the insurer's conduct cannot escape the cloak of bad faith.

The insured was not notified of any of the developments in the lawsuit until he was informed of the outstanding judgment against him, other than the initial excess letter and a letter advising of the time frame within which the case would be called for trial. He was never apprised of the results of the insurer's investigation of the claim, nor was he ever made aware of the status of the settlement negotiations. He was not advised of the trial date or of any developments during trial. Finally, the insured was not informed that the ad damnum had been raised to $300,000, thereby increasing his exposure from $5,000 to $290,000.

The sum total of this lack of communication on key matters is that the appellant was "kept in the dark . . . he was ignored." *Roberie* v. *Southern Farm Bureau Casualty Insurance Co.*, 250 La. 105, 115, 194 So. 2d 713, 716 (1967). Standing alone, these omissions might not by themselves support a finding that the insurer breached its duty to act in good faith. When taken

together, however, it is clear that the insurer acted in bad faith as a matter of law.

The failure to inform the insured of the changes that had occurred in the posture of the litigation precluded the insured from having any input in the direction of the litigation. This constituted an abandonment of the insured's duty to represent the appellant's interests "with all good fidelity." Instead, the insurer chose to conduct the defense unilaterally in a case where the insured had substantial exposure, without any disclosures to the insured of the potential risks, thereby completely depriving the insured of the opportunity to avoid or mitigate his potential loss.

■ The insured's damages are the difference between the judgment and the policy limit, plus interest and costs. *Wooten* v. *Central Mutual Insurance Co.*, 182 So. 2d 146, 148 (La. App. 1966). The insured also requested an award of attorney's fees. Attorney's fees under our practice are not awarded absent special legal authority or as a matter of contract. *Anderson* v. *State*, 147 Vt. ___, ___, ___ A.2d ___, ___ (1985); *Gramatan Home Investors Corp.* v. *Starling*, 143 Vt. 527, 535, 470 A.2d 1157, 1162 (1983). The question of the insured's entitlement to attorney's fees here was neither briefed nor argued and is therefore waived. *R. Brown & Sons, Inc.* v. *International Harvester Corp.*, 142 Vt. 140, 142, 453 A.2d 83, 84 (1982).

*Reversed and remanded in order that a judgment be entered obligating Ambassador Insurance Co. to pay to the plaintiff the amount paid by the plaintiff to satisfy the judgment entered November 2, 1982, in the matter of English v. Myers, 142 Vt. 144, 454 A.2d 251 (1982), together with interest at the rate of 12% per annum from the date of payment.*