**CORRADO BROTHERS, INC.,**
**Defendant Below, Appellant,**

v.

**TWIN CITY FIRE INSURANCE CO., a subsidiary of Hartford Fire Insurance Co., Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 21, 1989.
Decided: July 19, 1989.

William E. Manning (argued), Judith Nichols Renzulli and Richard A. Forsten, Duane, Morris & Heckscher, Wilmington, for appellant.

Robert K. Pearce (argued), Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for appellee.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a decision of the Superior Court, after a bench trial, awarding judgment for a retrospective premium on workmen's compensation insurance. The Superior Court ruled that the insurance carrier, Twin City Fire Insurance Company, a subsidiary of Hartford Fire Insurance Company ("Hartford"), was entitled to recover the sum of $48,617 from the defendant, Corrado Brothers, Inc. ("Corrado"), which sum represented workmen's compensation benefits paid by Hartford

during the 1981 premium year to settle a claim of a Corrado employee. The trial court rejected Corrado's assertion that Hartford's payment had not been made in good faith and after consultation with the employer. In this appeal, Corrado contends that the Superior Court erred as a matter of law in defining the duty owed by Hartford and in concluding that Hartford had acted in good faith and with reasonable care. We conclude that the Superior Court correctly applied the legal standard which governs the conduct of an insurer in the settlement of a claim. We also determine that the trial court's findings of fact are supported by the evidence and accordingly, affirm.

## I

This dispute arose under the terms of a policy issued by Hartford to Corrado for workmen's compensation insurance. The policy contained a retrospective premium endorsement, which provided that an annual premium would be based upon losses on workmen's compensation claims that Hartford estimated would occur in the ensuing policy year. If the actual losses incurred during the policy period proved to be less than the estimated claims, the insured would receive a partial rebate of the premium. If the losses were larger than estimated, the insured would be charged an additional premium. Corrado's estimated or standard premium for the 1981 policy year was $70,341. On July 1, 1982, when Hartford made its first retrospective analysis of the losses for 1981, it determined that the claims were less than the estimated premium. It thereupon refunded to Corrado $44,154, plus dividends of approximately ten percent of that amount.

In May, 1982, Gerald Jackson, a Corrado mechanic, submitted a bill to his employer for medical treatment for a shoulder injury. Neither Jackson nor Corrado were able to fix the precise date when the injury occurred, but eventually the injury was determined to have occurred in the month of November, 1981, when Jackson claimed he injured his shoulder while repairing construction equipment. Corrado reported this claim to Hartford, which began an investigation of the claim in October, 1982. Hartford's adjuster determined that the injury occurred on November 18, 1981, although Jackson had not consulted a physician, concerning his injury, until January 29, 1982. Jackson sought no further medical treatment for ten months thereafter and, at the time of his initial interview with Hartford's adjuster, was apparently seeking only payment for his past medical expenses. The Hartford adjuster treated the claim as minor.

In January, 1983, Jackson was hospitalized for neck and back complaints and a month later he underwent surgery. His treating physician attributed his condition to the November, 1981, injury. In view of this development, which prompted concern about the prospect of facing a substantial workmen's compensation claim, Hartford retained local counsel and proceeded to further investigate the matter. On April 11, 1983, Hartford advised Jackson that it was denying the claim "at this time" because of "insufficient information and lack of documentation", but that its investigation was "ongoing" and his "continued cooperation" was requested. Corrado officials then prodded Hartford to make a final decision on the claim and also advised Hartford that Jackson had been in two automobile accidents which may have contributed to his claimed injuries. Apparently, neither of these accidents had been publicly reported and Hartford was unable to independently verify that they had occurred.

The Jackson claim was eventually scheduled for a hearing before the Industrial Accident Board. By that time Hartford, acting through its counsel and claims representatives, was satisfied that the November, 1981 incident was most probably the precipitating cause of Jackson's back condition. Although the medical opinion on causation was not unanimous (one of Jackson's treating physicians attributed his condition to cervical arthritis), Hartford concluded that the weight of the medical evidence, including that of its own consultant, Dr. Rafael Yanez, supported Jackson's claim of causation. Since the disability evaluation of Hartford's orthopedic specialist was al-

most identical to that of Jackson's expert witness on disability, Hartford's counsel advised the carrier to pay the full amount of the temporary total disability claim, totalling $9,350.88, as well as the claimed 34 percent permanent partial disability of the cervical spine. Hartford did not consult with Corrado concerning the payment of the Jackson claim nor did it obtain Corrado's consent to the settlement.

Following the payment of the Jackson claim, Hartford recalculated Corrado's workmen's compensation premium for 1981 and imposed an additional retrospective premium in the amount of $48,617. Upon Corrado's refusal to pay the additional premium, Hartford filed suit in the Superior Court. Corrado defended the action on the grounds that Hartford's payment of the Jackson claim was made after insufficient investigation and in bad faith. After a trial, the Superior Court rejected Corrado's claim of bad faith. It also determined that Hartford's failure to advise Corrado of its intention to settle the claim did not materially prejudice Corrado's interests, because the award made to Jackson would have been the same had the parties proceeded to hearing before the Industrial Accident Board.

## II

Corrado's initial contention is premised upon considerations of contract law. It asserts that, at a minimum, Hartford had an obligation to inform Corrado of its intention to settle the Jackson claim, particularly in view of the fact that all of the funds which Hartford committed would eventually be the responsibility of Corrado under the retrospective premium provision. Hartford responds to Corrado's contention on two bases: one, that it has broad discretion in the settlement and adjustment of claims and two, that the language of the

policy does not require the consent or participation of the insured.[1] The Superior Court considered this provision as unambiguously conferring upon Hartford sole responsibility to settle any claim without securing the consent or participation of the insured. Corrado argues that, the policy language notwithstanding, this case must be viewed as one calling for participation by the insured because Hartford, in effect, settled the matter with Corrado's funds, not its own funds. We agree with the Superior Court that the meaning of the contractual provision is unequivocal and vests Hartford with broad discretion in the settlement of claims.

Despite the latitude imparted by policy provisions which authorize the insurer to settle a claim "as it deems expedient," it is recognized that there is a potential for conflict between the insurer and the insured if the settlement of a claim imposes residual consequences on the insured. Thus, the insurer's discretion is not unbridled where settlement of the claim will result in contribution by the insured of a deductible or reimbursable amount. *See Employers' Surplus Line Ins. Co. v. City of Baton Rouge*, La.Supr., 362 So.2d 561, 564–65 (1978). Furthermore, an insurer may not settle a claim in which a retrospective premium will be imposed on the insured unless the settlement is both in good faith and reasonable. *See Transport Indem. Co. v. Dahlen Transp., Inc.*, 281 Minn. 253, 161 N.W.2d 546, 549 (1968). It has also been recognized that where the settlement or recovery under the claim may exceed coverage limits the insurer has a heightened duty to advise the insured of such implications and a duty to permit the insured an opportunity to participate through independent counsel. *Myers v. Ambassador Ins. Co., Inc.*, 146 Vt. 552, 508 A.2d 689, 691 (1986).

---

1. Hartford's policy contains the following "Insuring Agreement."

**II. Defense, Settlement, Supplementary Payments:** As respects the insurance afforded by the other terms of this policy the company shall:
(a) defend any proceeding against the insured seeking such benefits and any suit against the

insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

■ Corrado argues that an insurer's duty in the handling of a claim, having the potential for imposition of a retrospective premium, is to be measured by the standards of a fiduciary. There is some support for viewing the insurer as a fiduciary, *vis-a-vis,* the insured. *See, e.g., Myers v. Ambassador Ins. Co., Inc.,* 508 A.2d at 691 (insurer has fiduciary duty to act in good faith when handling a claim against insured). However, we believe that the term *fiduciary* overstates the essential relationship arising out of a contract of insurance. *See, 2A Couch on Insurance 2d,* Section 23:11 at 787 (1984). The concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal and in which the fiduciary is required to pursue solely the interests of the beneficiary in the property. *Cf. Loft, Inc. v. Guth,* 23 Del.Ch. 138, 2 A.2d 225, 238–39 (1938) *aff'd,* Del.Supr., 255, 5 A.2d 503 (1939) (person in fiduciary relation of trustee is liable to account for *all* benefits which derived from beneficiary's property). The relationship of insurer and insured, however, arises contractually with each party reserving certain rights under the contract, the resolution of which often leads to litigation. Thus, the settlement of a claim may benefit the insurer to the extent that it eliminates or reduces the cost of contesting the claim through litigation. The settlement may, however, prejudice the interests of the insured to the extent that settlement may result in an increase in future premiums or represent a tacit admission of liability. This expected clash of interests is clearly not compatible with the concept of a fiduciary.

■ Although we do not view the insurer-insured relationship as a fiduciary one, we recognize that in the defense and settlement of claims the presence of divergent interests may place upon the insurer, who has assumed plenary responsibility for settlement, the burden of demonstrating that it acted reasonably and in good faith. The rationale for this approach has been expressed as follows:

The insurer, having been charged with the responsibility for investigating and adjusting the loss, is in possession of the relevant information upon which a determination of reasonableness and good faith must be based. The insured, having delegated the right and duty of investigation and settlement to the insurer, and having agreed to pay the expense incurred in carrying out this assignment, has, by the terms of its insurance contract, put the information critical to the issue of reasonableness and good faith in the exclusive possession of the insurer.

*Transport Indem. Co. v. Dahlen Transp., Inc.,* 161 N.W.2d at 549.

■ In conformity with this view, the Superior Court in a pretrial ruling, correctly determined that Corrado was entitled to raise as a defense unreasonableness, which would be a bar to Hartford's entitlement to recovery of the retrospective premium and, at trial, properly placed upon Hartford the burden of proving that the Jackson settlement was made in good faith and on reasonable terms. We thus conclude that the Superior Court applied the appropriate legal standards in assessing Hartford's conduct in the settlement of the Jackson claim.

### III

■ Corrado next attacks as "clearly erroneous" the Superior Court's findings that Hartford acted in good faith and with reasonable care in settling the Jackson claim. Our standard for review of this contention is well settled. In reviewing the factual findings of a judge sitting without a jury, this Court will uphold such findings if they are sufficiently supported by the record and if they are the product of an orderly and logical deductive process, even though we may have reached the opposite conclusion. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

Corrado asserts that Hartford's handling of the Jackson claim was deficient in both the investigation of the claim and in the professional judgment of its counsel in his evaluation of the merits of the claim.

Hartford tacitly concedes that its counsel,[2] whose selection was solely Hartford's prerogative, was under a joint obligation to protect the interests of the insured as well as those of Hartford. The Delaware Code of Professional Responsibility, in effect at the time the Jackson claim was negotiated, prohibited a lawyer from accepting employment which is likely to involve him in representing differing interests, DR 5–105 *Delaware Lawyer's Code of Professional Responsibility*, except after full disclosure of the possible effect of such representation in the exercise of his independent professional judgment on behalf of each. DR 5–107 *Delaware Lawyer's Code of Professional Responsibility*. The trial judge determined that the conduct of Hartford's counsel did not prejudice Corrado's interests, because the result achieved through the settlement was precisely what would have occurred if the matter had been contested before the Industrial Accident Board. Therefore, the trial judge found that no ethical violation was established.

While we agree with this conclusion, it is clear from this record that Hartford's counsel viewed his primary obligation as protecting the interests of Hartford. There was little, if any, communication between Hartford's counsel and Corrado, and clearly, Corrado's views on the terms of settlement were not sought before the settlement was effected. At the time of the settlement of the permanent partial disability claim, Hartford's counsel as well as its claims manager were aware that payment of the Jackson claim implicated the retrospective premium.

■ Of further concern is the fact that while the funding of the settlement was Corrado's responsibility, the cost of further litigation would have been borne primarily, if not entirely, by Hartford. Given these conflicting interests, it appears that Hartford's counsel had a duty to communicate to Corrado his evaluation of the Jackson claim, the conflicting interests involved, and the right to consult with independent counsel, or to request that Hartford discuss these matters with Corrado prior to the settlement.

■ Although we conclude that the extent of communication by Hartford to Corrado was lacking, we agree with the finding of the trial court that under the circumstances the settlement was reasonable. At trial, Hartford presented testimony by an experienced Industrial Accident Board practitioner who evaluated counsel's handling of the Jackson claim. This witness opined that the handling of the claim by Hartford's counsel was not professionally deficient. He noted that it was virtually undisputed that Jackson had sustained a compensable injury in the November, 1981, incident and that the medical evidence, with the exception of Dr. Garcia's testimony, was unanimous in attributing Jackson's condition to the 1981 incident. However, Dr. Garcia's evaluation was subject to attack, because it apparently overlooked Jackson's surgical history. The permanent partial disability estimate given by Hartford's medical expert was 33 percent, while that given by Jackson's physician was 34 percent. Jackson was represented before the Industrial Accident Board by experienced counsel who, in the opinion of Hartford's expert legal witness, would not have settled for less than the full period of claimed disability.

Based on the expert testimony, which was not rebutted, the Superior Court concluded that, even in the absence of Corrado's consent and participation, Hartford had borne its burden of proof in demonstrating that the Jackson settlement was reasonable and made in good faith. Given our standard of review we will not disturb these findings which are supported by the evidence. Nor do we give credence to Corrado's claim that Hartford's handling of the Jackson claim was colored by the fact that after 1982, Corrado had placed its workmen's compensation insurance with another carrier. Although the Superior Court did not directly address this argu-

---

2. Hartford's counsel in this appeal did not represent Hartford or Corrado in the handling of the Jackson claim.

ment, its rejection of Corrado's "bad faith" contention and our independent review of the record does not support any inference that Jackson's claim would have been settled differently had there been an ongoing insurer-insured relationship between the parties.

We agree with the Superior Court that, in the final analysis, Hartford's conduct in the handling of this claim must be measured by the result achieved. It is clear from this record that denial of the claim by Hartford would have resulted in at least the same award of compensation, sufficient to require the payment by Corrado of a comparable retrospective premium.

The decision of the Superior Court is affirmed.