Vermont Superior Court
Filed 06/23/25
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03182

| Green Mountain Credit Union v. Brandy Mathieu et al |
| --- |

## DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Green Mountain Credit Union ("GMCU") seeks a declaration of rights with respect to a Durastar truck. Defendant Kenneth Mathieu Sr. counterclaims, asserting that GMCU wrongfully converted the truck. GMCU has moved for summary judgment on its claims, and on Mr. Mathieu's counterclaim. The court grants the motion in substantial part.

The material facts are not in dispute. In the spring of 2020, Mr. Mathieu's son and daughter-in-law, Defendants Kenneth Mathieu II and Brandy Mathieu ("Borrowers"), applied for and received a loan from GMCU in the amount of $94,877.79 for the purpose of purchasing a Durastar truck. On June 3, 2020, Borrowers signed a document titled Loan and Security Agreements and Disclosure Statement ("Loan Agreement"), in which they promised (1) to use the loan for the purpose of buying the truck and (2) that "no one else has any interest or claim against" the truck. Borrowers gave GMCU a security interest in the truck, and the Loan Agreement specifies that "[t]he security interest secures the loan." Borrowers promised they would "allow no other security interest or lien to attach to" the truck by their actions "or by operation of law." GMCU released the funds to Borrowers on June 8, 2020. Borrowers then used the funds to purchase the truck identified in the Loan Agreement.

For reasons that do not appear, nobody filed an application to register the truck with the Vermont Department of Motor Vehicles ("DMV") until November 2020. It was not Borrowers who filled out the registration application, however; it was Mr. Mathieu, who listed himself and his son as co-owners of the truck. He identified GMCU as "Lienholder." DMV issued a Certificate of Title in January 2021; it identified the owners of the truck as Mr. Mathieu Sr. and his son, and GMCU as "First Lienholder," with June 8, 2020, as the date of the lien.

Borrowers fell behind in their payments. GMCU notified them in October 2020 that they were in default and that it intended to take possession of the truck if they failed to bring the loan into compliance. The Chittenden County Sheriff's Department took possession of the truck in March 2023, and GMCU notified Borrowers the following month of its intent to sell the truck at a public sale.

Borrowers did not object to the proposed sale, but before GMCU put the truck up for sale, Mr. Mathieu informed GMCU that he believed he had an ownership interest in the truck. This action followed.

In their papers, GMCU and Mr. Mathieu focus their efforts on proof of Mr. Mathieu's ownership of the truck. While there is at least considerable doubt as to whether Mr. Mathieu has a cognizable legal interest in the truck, the court need not resolve that question to determine GMCU's right to take possession of and sell the truck. Instead, the conclusive answer to that question is found in the Uniform Commercial Code; the answer is the same whether or not Mr. Mathieu has an ownership interest.

At the hearing on this motion, Mr. Mathieu's attorney conceded that GMCU has a purchase-money security interest in the truck. That conclusion, frankly, is inescapable. Per the UCC, "A security interest in goods is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral with respect to that security interest." 9A V.S.A. § 9—103(b)(1). The parties agree that Borrowers used the money GMCU lent to purchase the truck. The Loan Agreement gave GMCU a security interest in the truck. GMCU's security interest therefore attached when the Borrowers used the money to purchase the truck. *Id.* § 9—203(a). No further action was required to perfect GMCU's interest; per 9A V.S.A. § 9—309(1) that interest was perfected when it attached. *See also id.* § 9—311(a)(2) (filing of financing statement unnecessary to perfect security interest in motor vehicles subject to title requirements of Title 23).

A security interest is enforceable against third parties if certain conditions are met. As applicable to the circumstances of this case, those circumstances are: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has authenticated a security interest in the collateral. *See id.* § 9—203(b). These conditions were clearly met here. It does not matter that Mr. Mathieu was not a party to the Loan Agreement; his interest as a title holder to the truck has no priority over GMCU's purchase-money security interest. *See id.* § 9—201(a) ("security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors").

Mr. Mathieu was clearly aware of GMCU's status as a first lienholder when he applied for a certificate of title; it was he who listed GMCU on the application as a first lienholder. Even if he gave value for his claimed interest in the truck, therefore, he has no argument that he should be treated as a good-faith purchaser for value. *See id.* § 9—317(b) (buyer of goods takes free of security interest if buyer gives value and receives delivery of collateral without knowledge of security interest before it is perfected). Conversely, there is no evidence, or even a suggestion, that GMCU was aware of any claim Mr. Mathieu may have had to the truck before it entered into the Loan Agreement with Borrowers and

obtained a purchase-money security interest in the truck. Rather, Borrowers asserted in the Loan Agreement that no one else had an interest in the truck.

The UCC is clear under that GMCU's security interest has priority over Mr. Mathieu's claim of ownership. It is also clear, under both the Loan Agreement and the UCC, that upon Borrowers' default, GMCU was entitled to take possession of the truck. *See* Loan Agreement ¶ 9 ("When You are in default, We may . . . take possession of the Property."); 9A V.S.A. § 9—609(a) (secured party may take possession of collateral following default). Per the same authorities, GMCU has the right to sell the truck. *See* Loan Agreement ¶ 9 ("After We have possession of the Property, We can sell it and apply the money to any amounts You we Us."); 9A V.S.A. § 9—610(a) ("after default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral . . . .").

This leaves only Mr. Mathieu's eleventh-hour invocation of the equitable doctrine of marshaling. *See* 9A V.S.A. § 9—610 Comment 5 ("When a secured party's collateral is encumbered by another security interest or other lien, one of the claimants may seek to invoke the equitable doctrine of marshaling."). That doctrine does not avail Mr. Mathieu, for at least three reasons. First, Mr. Mathieu offers no evidence that he has any "security interest or other lien" against the truck, much less that it has in any way been perfected. Second, he offers no evidence that there is any alternative fund available to satisfy Borrowers' debt to GMCU. Finally, and perhaps most significantly, equity precludes Mr. Mathieu's invocation of any equitable doctrine. Here, two hoary maxims of equity apply. The first, and more fundamental, is that "He who seeks equity must do equity." *See Patch & Co. v. First Nat'l Bank*, 90 Vt. 4, 9 (1916). The second is "Equity helps the vigilant, not the dormant." *See Philbrick v. Johnson*, 91 Vt. 270, 276 (1917). If, as Mr. Mathieu now asserts, it was the plan all along that he would have an ownership interest in the truck, he ought to have asserted that at the time of the loan and purchase. Instead, he lay in the grass, first allowing GMCU's advance of funds on a representation that Borrowers, and they alone, would have an interest in the truck and then, with full knowledge of GMCU's security interest, waiting until after default and repossession to assert any rights. Equity cannot condone, much less reward, such conduct.

The foregoing discussion makes clear that GMCU is entitled to summary judgment on its claim for declaratory relief. Its claim for attorney's fees and costs, however, does not rest on such solid ground. GMCU relies on the Loan Agreement and principles of equity to argue that Mr. Mathieu should be required to pay its attorneys' fees and costs. While Borrowers promised in the Loan Agreement "to pay all costs, including but not limited to any attorney fees [GMCU] incur[red] in protecting [its] security interest and rights" in the truck, Mr. Mathieu was not a party to the Loan

Agreement and made no such promise. Vermont follows the American Rule with regard to fees, "which means that parties must bear their own attorneys' fees absent a statutory or contractual exception." *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 246 (2001) (citing *Myers v. Ambassador Ins. Co.,* 146 Vt. 552, 558 (1986)). Although courts may "use their equity power to award fees 'as the needs of justice dictate,' " *id*. (quoting *In re Gadhue*, 149 Vt. 322, 327 (1987)), "[t]his power may be invoked 'only in exceptional cases and for dominating reasons of justice,' " *id*. (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939)). The type of conduct justifying an award of fees on equitable grounds involves bad faith. *See id*. On the undisputed facts now before the court, the court cannot conclude as a matter of law that Mr. Mathieu acted in bad faith. The court notes that Mr. Mathieu has not sought summary judgment on this question; nor, even if he had, could the court conclude on the present record that he has sufficiently shown the absence of bad faith. Indeed, there is at least a colorable argument, as suggested above, that Mr. Mathieu's claim of an interest in the truck somehow superior to that of GMCU was not asserted in good faith. Resolution of that question, however, will require a more robust factual record. In short, this is a question that must await further resolution.

## ORDER

The court grants GMCU's motion in substantial part. GMCU is entitled to a judicial declaration that it has a perfected security interest in the truck, that that interest is superior to any interest that Mr. Mathieu may claim, that GMCU was therefore entitled to take possession of the truck, and that GMCU is now entitled to dispose of it in a commercially reasonable manner. Equally, GMCU is entitled to judgment on Mr. Mathieu's counterclaim for conversion; clearly, if GMCU had the right to take possession of the truck, it cannot be found wrongfully to have converted it. What remains, then, is GMCU's claim for attorney's fees and any costs other than those recoverable as a matter of right under V.R.C.P. 54(d). The parties shall confer and submit a discovery/mediation stipulation with respect to that claim.

Electronically signed pursuant to V.R.E.F. 9(d): 6/23/2025 11:22 AM

_____
Samuel Hoar, Jr.
Superior Court Judge