[Civ. No. 21653.   First Dist., Div. Three.   June 25, 1964.]

BERYL MARTIN, a Minor, etc., Plaintiff and Appellant, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant and Respondent.

Lacey, Holbrook & Meyenberg and Richard E. Holbrook for Plaintiff and Appellant.

J. T. Harrington for Defendant and Respondent.

DEVINE, J.—The action is for an excess over the stated limit of a public liability insurance policy based on asserted bad faith of the company in refusing to settle. Demurrer to the complaint was sustained with leave to amend. The demurrer is based solely on asserted failure to state facts sufficient to constitute a cause of action. The minute order sustaining demurrer stated ''no cause of action.'' Plaintiff did not amend, judgment of dismissal followed, and plaintiff appeals from the judgment.

### The Facts

The facts are stated as they appear in the complaint and the exhibits incorporated into it. The allegations are taken as true because of the state of the case, but certain additional

assertions contained in appellant's brief are ignored as outside the record.

Plaintiff, a minor, was plaintiff in a personal injury case, which she brought against Ezekiel Belman. Belman's mother's vehicle was insured by respondent up to $10,000, for injury to person. The policy provided insurance for persons living in the mother's household, and Belman lived in the household. Plaintiff obtained a verdict for $25,000. Belman assigned his cause of action, if any he had, to plaintiff, as is common in this type of action.

Further allegations of the complaint, a pleading which must be read as stating Belman's cause, as assigned, are: While Belman was driving the automobile, Beryl Rae Martin was injured in a collision of the vehicle. It is alleged indirectly that she was a guest. She had brought action against Belman in two counts, wilful misconduct and intoxication.

On September 12, 1962, counsel for plaintiff in the personal injury action (who now represents her as assignee) wrote to the attorney who represented Belman on behalf of respondent carrier, and stated that plaintiff was willing to accept the policy limits in complete satisfaction of her claim, and that, considering Belman's deposition and the depositions of two other persons, it was his opinion that refusal to settle for the policy limits would be ''an exercise of bad faith'' on the part of defense clients. He received no reply to the letter. He wrote a second letter on November 14, 1962, referring to the earlier letter, and saying that the offer would be withdrawn 10 days before the date set for trial, that is, at 5 p.m., January 11, 1963. In this letter, he made further reference to the merits of his client's case, saying that it was his considered opinion that liability was clear-cut and that the verdict would be far in excess of the policy limits. In more detail, he said he realized that the defense was probably relying on certain statements of the minor plaintiff as contained in the police report, but that these were made while she was under the influence of demerol; that the statements were in some respects inaccurate, but were true in reciting that plaintiff had no idea that Belman was drunk when she got in the car. Counsel's letter says that plaintiff did not drink herself and did not see Belman take any drinks. Further, counsel wrote that the judge at pretrial conference had indicated that there would be no defense which could even be argued on the wilful misconduct cause. The conclusion repeats that acceptance must be before 10 days prior to trial.

The attorney who represented Belman and the carrier did not reply, but the San Jose claims manager did, on January 11, 1963. He offered to settle for $9,000, in a telephone conversation. Plaintiff's counsel asked him if he knew that the $10,000 offer would expire 10 days before the trial (trial had been postponed to January 23). The manager said he did not, but he still was not going to offer more than $9,000.

The complaint alleges that "at the time said claims manager made said offer he knew full well that the chances of the plaintiff Beryl Rae Martin prevailing in her personal injury action were very great and that if a verdict were rendered in her favor that it would very likely exceed Ten Thousand Dollars ($10,000.00)."

Subsequently, on January 16, 1963, seven days before the personal injury action was to begin, and after plaintiff's offer to settle for $10,000 had expired, defendant Hartford Accident and Indemnity Company offered to settle for the policy limits of $10,000. This offer was refused by the plaintiff in the personal injury action. On the opening day of the personal injury trial, January 23, 1963, counsel for defendant carrier stated to counsel for plaintiff that the offer made by the insurance company to settle for $10,000 was formally withdrawn.

"During the course of [the] personal injury lawsuit," it was brought to the attention of the carrier that medical specials of plaintiff in that action were in excess of $5,000 and that she was crippled for the rest of her life. It is not stated at just what point of the litigation this became known to the insurance company.

At the trial, Belman testified that he had pleaded guilty to reckless driving. Defense counsel admitted that the accident was caused by intoxication of Belman. The jury unanimously found for plaintiff on both causes of action and awarded her $25,000.

The complaint alleges that defendant carrier at no time advised its insured that the action could be settled for $10,000, and that the first time Belman knew of the offer was subsequent to the $25,000 verdict. The complaint alleges that the company exercised bad faith in refusing to settle for the $10,000 policy limit; that as a result, a cause of action arose in favor of Belman for the full amount of the verdict, less the $10,000 which was paid following the verdict; and that Belman had assigned the cause to plaintiff.

### Duties of the Insurance Carrier

In cases of this kind, one must be careful to distinguish the rights of plaintiff as assignee of the insured from those which she had in the personal injury action, and also to distinguish the position of her counsel in the injury case from that which he holds in the present one. Formerly, plaintiff was opposed to both the insured and his carrier; presently, she has all of the rights, and only the rights, of the insured against the carrier which have sprung from the judgment. To use the common expression, she "stands in [his] shoes." (*Brown* v. *Guarantee Ins. Co.*, 155 Cal.App.2d 679, 696 [319 P.2d 69].) What, then, were respondent's duties to Belman? Did it fulfill them? We give the answers separately in respect of various factors which have been recognized in decisions of the courts.

■ 1. Respondent was bound to exercise good faith in considering the insured's interest in the settlement. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 661 [328 P.2d 198].) ■ Good faith in each case is a question of fact. (*Brown* v. *Guarantee Ins. Co.*, supra, at p. 689; *Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387, 400 [5 Cal. Rptr. 488]; *Ivy* v. *Pacific Automobile Ins. Co.*, 156 Cal. App.2d 652, 659 [320 P.2d 140].) ■ It is alleged in the complaint that the company "exercised bad faith" in refusing to settle for the policy limits. This allegation is essentially one of an ultimate fact, and although it may be doubted that the allegation, standing alone, would state a cause of action, it does give the foundation for all of the other allegations and, in particular, it supplies what may be lacking in detail about facts about which respondent, at the demurrer stage of the litigation, must have more information than does appellant (specifically, as to No. 3, below).

■ 2. It was respondent's duty to give at least as much consideration to the interests of the insured as it gave to its own interests. (*Comunale* v. *Traders & General Ins. Co.*, supra, at p. 659; *Ivy* v. *Pacific Automobile Ins. Co.*, supra, at p. 660.) The allegations of the complaint indicate that the carrier did not do this. At trial, it may develop that the carrier must have known, when it offered $9,000 on the $10,000 policy, that plaintiff's chance for a verdict well in excess of the policy limit was very good. It may appear at trial that the company's representative made the $9,000 offer because, so far as the policy was concerned as distinguished from any responsibility of its insured, the company had not much more to lose. It was expressly informed that plaintiff's

offer would soon expire, but the carrier did not ask for any extension. Instead, its representative told counsel for plaintiff that it would pay no more than $9,000. ■ The fact that there is great risk of a verdict substantially higher than the policy limit is an important factor in the matter of good faith. (*Comunale* v. *Traders & General Ins. Co., supra,* at p. 659; *Davy* v. *Public National Ins. Co., supra,* at p. 395.) A test which has been applied is this: If there were no policy limit, would the carrier have acted in the way it did? (*Davy* v. *Public National Ins. Co., supra,* at p. 400.) It is arguable that if there had been no limit, or the limit had been very high, the company would not have been as heedless as is alleged, to the warning about the expiration of the offer and would not have announced, without reservation, that it would not pay the additional $1,000.

■ 3. Respondent had the duty to give intelligent consideration to an offer of settlement, with reasonable investigation and a decision by persons reasonably qualified to decide upon the risks involved. (*Palmer* v. *Financial Indemnity Co.,* 215 Cal.App.2d 419, 428-429 [30 Cal.Rptr. 204].) It would seem that details on this subject would have to be supplied after discovery procedure, and it will be remembered that there was no special demurrer. It does appear, however, from the pleading that the personal injury case had gone beyond the pretrial conference and that the pretrial judge had warned the defendant about the probable consequences of the wilful misconduct charge, and that the trial date was near at hand. Investigation by the defense should have been well advanced. The investigation may have indicated probable liability, bringing about the offer of nine-tenths of the policy limit. The defense need not have made anything like an accurate prediction of what a jury would do. ■ Nevertheless, the verdict itself is one indication of what the company might have anticipated. (*Davy* v. *Public National Ins. Co., supra,* at p. 401.) We mean, of course, according to the test of good faith, and not of ordinary care, because this type of action is not based upon negligence. (*Brown* v. *Guarantee Ins. Co., supra,* at p. 683.)

4. The company owed it to its insured not to refuse to accept a reasonable settlement, under all the circumstances, within the policy limits. (*Comunale* v. *Traders & General Ins. Co., supra,* at p. 661.)

■ 5. The company, having the right to select counsel to defend the insured, had the duty to communicate to him the

results of any investigation indicating liability in excess of policy limits, and any offers of settlement which were made, so that he might take proper steps to protect his own interest. (*Davy* v. *Public National Ins. Co., supra,* at p. 396.) According to the complaint, the insured was not informed of the settlement offer. An insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him.

### Effect of Purported Acceptance of Expired Offer

The principles stated above do not seem to be controverted by respondent, but respondent relies on the tender of the full policy limit of January 16 as being a complete defense. In the points and authorities submitted by respondent with the demurrer, respondent concedes that the complaint would state a good cause of action were it not for the allegation relating to the January 16, 1963, tender. ▮ Respondent relies on one sentence in the case of *Hodges* v. *Standard Accident Ins. Co.,* 198 Cal.App.2d 564, 576 [18 Cal.Rptr. 17], which reads as follows: "The time when the issue of bad faith of the insurer must be measured is immediately prior to, or during, the trial of the personal injury action resulting in the verdict in excess of the policy limits."

We do not regard this isolated sentence as declaring that it is an absolute defense to a charge of bad faith that the insurer offers full policy limits immediately prior to the trial or during the trial or, a fortiori, somewhat earlier than directly preceding trial. In the *Hodges* case, the court's purpose in making reference to the time was to point out that there was no *current* negotiation with plaintiff's attorney to be acted upon immediately prior to the third trial of the case, the one which produced the verdict in excess of the policy limits. There had been an original offer of settlement before the first trial, but since that time the defense had won twice and there was nothing new in the case to warrant a verdict above the policy limits or even to make liability probable, as found by the trial court. (198 Cal.App.2d at p. 576.)

The single sentence from the *Hodges* case was not intended, we are sure, to alter the essential test of liability in this kind of case, namely, "good faith," a test announced in the decisions given above. None of those cases makes reference to exculpation from bad faith by a belated and ineffective tender which renders no protection to the insured.

Plaintiff in the personal injury action had a right to set a time limit for acceptance of her offer. There is nothing in the pleading, which is the only matter before us, to show that it was unreasonable for her to do so, particularly because no response had been made to her attorney's first letter. Besides, the time for trial was drawing near. Respondent had a continuing duty to protect its insured, and this duty must be measured in the light of the time limitation which plaintiff had placed on her offer. Actually, the tender of the $10,000 seems to have done no more for the insured than if it had not been made at all. At the end of the trial, he was faced with a $15,000 liability caused, according to the pleading, by the refusal of the carrier to make the $1,000 addition to its tender within the lifetime of the offer.

It is argued by respondent that an insurance carrier need not be governed by whatever time limit counsel for plaintiff in ·a personal injury action may impose. This, no doubt, is true. ▇▇ The test is the one laid down by the courts, namely, that of good faith or bad faith of the insurer, and this is to be determined by the circumstances of each case. Unless plaintiff as assignee can convince the trier of fact that the carrier in this case did not exercise good faith, plaintiff cannot prevail. A similar argument to that made by respondent was urged in *Brown* v. *Guarantee Ins. Co., supra,* namely, that the imposition of liability in excess of policy limits would cause more injured claimants to propose settlement for the policy limits when the company is defending an insured who is apparently judgment proof. The court gave the answer that the insurer has nothing to fear so long as its refusal to settle is made in good faith. (155 Cal.App.2d at p. 696.)

Similiarly, the insurer in this case, in dealing with an offer limited in time but made close to the date of trial, need only have exercised good faith. ▇▇ We believe that the allegations of the complaint, which presently we must take as true, are sufficient to charge the carrier with lack of good faith.

It is appropriate to say that our holding is simply that a cause of action has been stated for want of good faith, and that in pointing out, above, elements which may, if supported factually, sustain plaintiff's charge (a procedure made necessary by the judgment of dismissal), we do not intend to hold, in advance of trial, that any single fact, or any parti-

cular combination of facts, will constitute the necessary evidence of the essential fact, namely, bad faith on the part of the insurer towards its insured.

Judgment reversed.

Draper, P. J., and Salsman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 20, 1964.