912 P.2d 1333

Denise MIEL, Plaintiff–Appellee/Cross–
Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation; Cindy Hoekstra, an Ari-
zona resident, Defendants–Appel-
lants/Cross–Appellees.

1 CA–CV 93–0191.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 12, 1995.

Review Granted March 19, 1996.

See also 804 P.2d 1323.

The Langerman Law Offices, P.A. by Richard W. Langerman, Phoenix, for Plaintiff–Appellee/Cross–Appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Ralph E. Hunsaker and Christopher Robbins, Phoenix, for Defendants–Appellants/Cross–Appellees.

## OPINION

KLEINSCHMIDT, Judge.

Denise Miel was injured in an automobile accident caused by Greg McKenzie's negligence. McKenzie was insured by State Farm Mutual Automobile Insurance Company. State Farm failed to settle the case for the policy limits, exposing McKenzie to a judgment in excess of those limits. Miel, as McKenzie's assignee, sued State Farm for bad faith after it failed to settle her claim. The jury returned a verdict in favor of Miel on her bad faith claim, and State Farm has appealed, contesting various rulings of the trial court. Miel has cross-appealed, seeking review of the trial court's dismissal of her negligence claim against State Farm and its claim representative. We reverse because the trial court failed to instruct the jury that mistake alone would not constitute bad faith and because the trial judge did not allow the insurance company to question why the Plaintiff and her attorney insisted on adhering to the settlement deadline. On the cross-appeal, we hold that the careless handling of the claim did not give rise to a cause of action against the insurance company for negligence.

### FACTS AND PROCEDURAL HISTORY

The accident involving Miel and McKenzie occurred in December 1988. Shortly thereafter, State Farm assigned a claims representative to handle Miel's liability claims against McKenzie. By January 1989, Miel had retained an attorney to represent her. Miel's attorney advised State Farm that she was representing Miel, and informed State Farm that she would be in contact once the matter had been evaluated. Miel's attorney also requested that State Farm separate Miel's property damage claim from her bodily injury claim. State Farm honored this request, assigning the claims representative to handle just the bodily injury claim. By this time the claims representative had determined that McKenzie was 100% liable.

In April 1989, Miel's attorney wrote to State Farm to inquire about the policy limits on McKenzie's policy. Enclosed with the letter was a report from Miel's doctor showing that Miel had a permanent hearing loss as the result of the injury. The letter stated, "If we are dealing with a minimal limits claim, you can expect to receive a policy limit demand immediately."

Upon receipt of this letter, the claims representative's supervisor authorized her to inform counsel of the $25,000/$50,000 policy limits, noting in the file that, "If this is a limits case, just as well get it out in the open and conclude it." The supervisor also raised the reserves to $25,000.

On May 1, 1989, the claims representative spoke with Miel's attorney and disclosed the limits of McKenzie's policy. Counsel informed the claims representative that Miel would be sending a policy limit demand in the near future. On May 4, 1989, Miel's attorney did send State Farm a letter containing an "offer of settlement." The letter required several things of State Farm. First, State Farm had to confirm that the policy limits were $25,000/$50,000. Second, State Farm had to obtain an affidavit from McKenzie stating that no additional insurance was available to cover the accident. Third, State Farm was required to provide a sworn statement from McKenzie regarding his financial condition. Finally, State Farm was required to tender the policy limits upon the request of Miel. The letter also set a time limit, requiring State Farm to comply with the four conditions no later than May 19, 1989.

The claims representative received this letter on May 8, 1989, and on May 11, 1989, she

sent Miel's attorney a letter acknowledging "receipt of your May 4 policy limit demand." The claims representative responded that she would be in contact with counsel regarding an offer as soon as she had reviewed the information submitted by Miel. She did not ask for or indicate that additional time was needed to respond to Miel's offer.

When the claims representative received the May 4 letter, she was aware that policy limit demands for settlement should be immediately referred to her supervisor for consideration, and that the insured must be kept informed of such offers. However, the claims representative neither referred the file to her supervisor nor contacted McKenzie about the settlement offer or the information needed from him.

Instead of doing these things, the claims representative misplaced the file for a period of time, and did not review it again until May 25, 1989, while she was working at home over the Memorial Day holiday. At this time, the claims representative testified that she reviewed only the information submitted with the May 4 letter; she did not refer to the letter itself and the time limitation set forth therein until either Tuesday, May 30, 1989, or Wednesday, May 31, 1989, after she had returned to the office.

The claims representative took the file to her superintendent on May 31, 1989, and received authorization to offer the $25,000 policy limits in return for settlement of Miel's claims and a full and complete release of any claims against State Farm or McKenzie. The claims representative called counsel's office and left a message to that effect. Miel's attorney did not respond to the message, but instead filed a complaint on Miel's behalf against McKenzie on that same day. The attorney had never attempted to contact the claims representative after sending the May 4 letter.

The claims representative received a copy of the complaint on June 1, 1989. She again contacted Miel's attorney and advised her that State Farm was willing to settle the claim for the $25,000 policy limits. The claims representative admitted that she had not yet contacted McKenzie or obtained the requested information from him regarding his financial condition and the lack of other available insurance.

Miel's attorney rejected the offer, and told the claims representative that further negotiations would have to be through defense counsel. Thereafter, McKenzie entered into a *Damron* agreement with Miel, in which he agreed to permit a judgment to be entered against him for an amount in excess of his policy limits and to assign any bad faith claim he may have had against State Farm to Miel in exchange for her covenant not to execute on the judgment against him. A trial was held on damages, and the judge determined that Miel had sustained $75,000 in damages. A judgment was entered against McKenzie for that amount.

Miel subsequently filed a complaint against State Farm and the claims representative, alleging breach of contract, negligence and breach of the duty of good faith and fair dealing. State Farm and the claims representative admitted that they had made a mistake by misplacing the time limit demand letter and not acting on it. However, they affirmatively alleged that negligence was not grounds for suit against them, that such a mistake did not rise to bad faith, and that Miel had deliberately set them up for a bad faith claim.

Thereafter, State Farm moved for summary judgment on Miel's complaint. Miel then moved for partial summary judgment for the purpose of precluding discovery regarding her conduct and the motivation of her attorney in this case. She also moved for partial summary judgment on her negligence claim. State Farm responded to her motion for partial summary judgment on the negligence claim by again moving to dismiss that count. State Farm also filed a supplemental motion for summary judgment arguing that McKenzie had breached his duty to cooperate by entering into the *Damron* agreement with Miel, thereby relieving State Farm of its obligations to him under the policy.

The trial court: (1) denied Miel's motion for partial summary judgment on the negligence claim, and granted State Farm's motion to dismiss that count; (2) denied State Farm's motion for summary judgment on the bad faith and punitive damages claims; (3) granted Miel's motion for partial summary judgment regarding the conduct and motives of Miel and her attorney; and (4) denied State Farm's supplemental motion for summary judgment. Miel then sought special action relief from this Court and filed a petition for review with the supreme court regarding the dismissal of her negligence claim. Both courts denied review. *Miel v. Superior Court,* No. 1 CA–SA 91–0239; *Miel v. Superior Court,* No. CV 91–0413–PR.

The matter proceeded to trial before a jury. After both parties rested, the trial court directed a verdict dismissing the complaint against the claims representative, but denied State Farm's motion for a directed verdict on the bad faith and punitive damages claims. The jury returned a verdict in favor of Miel on the bad faith claim, awarding her the $50,000 in excess liability incurred by McKenzie. However, the jury found in State Farm's favor on the punitive damages claim.

State Farm then moved for a new trial. The trial court denied this motion, and State Farm filed this appeal, contesting various rulings by the trial court. Miel has cross-appealed from the dismissal of her negligence claim, asking us to review that issue in the event we reverse on any issue raised on appeal.

### THE TRIAL COURT PROPERLY ADMITTED NEWSLETTERS AND A PORTION OF STATE FARM'S GENERAL CLAIMS MANUAL

The trial court admitted into evidence two articles from State Farm's in-house newsletter, which discussed the handling of excess liability claims. The court also admitted a portion of State Farm's General Claims Manual which discussed the handling of such claims. State Farm argues that this evidence bore no relevance to the facts of this case, and that even if it did, such relevance was substantially outweighed by its prejudicial effect.

■ The articles were relevant because they addressed the company's approved policies and procedures for handling such claims—policies and procedures which the claims representative admits she did not follow. The manual, like the articles, notes that the failure to keep an insured informed of settlement offers can constitute bad faith.

■ We do not believe the evidence was particularly prejudicial because the claims representative admitted that she had failed to follow established State Farm procedures in handling this case. When viewed from another perspective, the articles and manual are helpful to State Farm. Arguably, they demonstrate that the company had gone to considerable trouble to be sure its employees dealt with insureds and injured persons in good faith. The trial court did not abuse its discretion in admitting them into evidence.

### THE QUESTION POSED BY MIEL'S ATTORNEY TO STATE FARM'S REPRESENTATIVE ABOUT OTHER BAD FAITH CASES WAS PROPER

■ At trial, State Farm objected on the ground of immateriality to a question posed by Miel's attorney to one of its representatives concerning other bad faith cases against the company.

Q: And you're aware that there have been other cases where State Farm has been held responsible for excess liability judgments following the failure to pay a policy limit demand?

A: Yes, I'm aware of it.

This question was material to Miel's proposition that State Farm's failure to pay the policy limit demand in this case was not an isolated incident, but rather one of several such incidents. *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 498, 733 P.2d 1073, 1081 (1987) (evidence of prior similar claims is relevant in

a bad faith case). Although it does not appear that any foundation was laid to establish the similarity of the other cases to Miel's case, State Farm failed to raise a foundational objection, thereby waiving any such objection. *Hawkins,* 152 Ariz. at 496, 733 P.2d at 1079.

In addition, the admission of this one statement does not appear to have harmed State Farm. Had the jury accepted Miel's contention that State Farm engaged in a pattern of misconduct in handling claims against its insureds, it would likely have assessed punitive damages against State Farm. Yet, no such damages were awarded. The jury limited its award to the excess liability imposed against McKenzie for Miel's damages.

### THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT MERE NEGLIGENCE IS NOT SUFFICIENT TO ESTABLISH BAD FAITH

State Farm claims it is entitled to a new trial because the trial court refused to give two proposed instructions to the effect that mistake and inadvertence alone cannot constitute bad faith. State Farm's Requested Jury Instruction No. 4 provided:

Negligence or mistake in performance or judgment such as misfiling or losing paperwork on the part of an insurance company resulting in a failure to settle litigation against its insured is not sufficient to impose liability and the plaintiff must prove the insurer acted in bad faith in order to recover.

State Farm's Requested Jury Instruction No. 5 provided:

As long as an insurance company acts honestly on adequate information and gives equal consideration to the interests of its own and its insured, it is not liable because of a mistake or negligence.

We will affirm the trial court's instructions if, taken as a whole, they provide the jury with the proper rules for making its decision. *Andrews v. Fry's Food Stores of*

*Arizona,* 160 Ariz. 93, 95, 770 P.2d 397, 399 (App.1989). Here, pursuant to the parties' stipulation, the trial court did instruct the jury on bad faith with Recommended Arizona Jury Instructions 2d (Civil) Bad Faith Instruction No. 8. This instruction states:

There is an implied duty of good faith and fair dealing in every insurance contract. Plaintiff claims that defendant breached this duty. The duty of good faith and fair dealing requires an insurance company to give the same consideration to its insured's interest as it gives to its own when it considers a settlement offer.

The test for evaluating whether an insurance company has given equal consideration to the interests of its insured is whether a prudent insurer without policy limits would have accepted the settlement offer.

In determining whether defendant breached its duty of good faith and fair dealing, you may consider the following:

1. The strength of the injured claimant's case on the issues of liability and damages;

2. Whether the insurer attempted to induce its insured to contribute to the settlement;

3. Whether the insurer failed to properly investigate the circumstances of the claim in order to ascertain the evidence against its insured;

4. Whether the insurer rejected the advice of its attorneys or other agents;

5. Whether the insurer failed to inform its insured of a compromise offer;

6. The amount of financial risk to which each party would be exposed in the event of a refusal to settle;

7. Whether the insured was at fault in inducing the insurer's rejection of the compromise offer by misleading the insurer about the facts; and

8. Any other factors tending to establish or eliminate bad faith on the part of the insurer.

There are two elements to the tort of bad faith: (1) that the insurer acted unreasonably toward its insured, and (2) that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it. *Trus Joist Corp. v. Safeco Ins. Co. of America,* 153 Ariz. 95, 104, 735 P.2d 125, 134 (App.1986). Mere mistake and inadvertence are not sufficient to establish a claim for bad faith. *Id.; Rawlings v. Apodaca,* 151 Ariz. 149, 157, 726 P.2d 565, 573 (1986). In *Rawlings,* our supreme court stated:

> [W]e believe the culpable conduct is an intentional act by which the insurer fails to provide the insured with the security and protection from calamity which is the object of the relationship.
>
> The "intent" required here is an "evil hand"—the intent to do the act. *Mere negligence or inadvertence is not sufficient*—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds.

*Id.* at 160, 726 P.2d at 576 (citations and footnotes omitted) (emphasis added).

It is the duty of the trial court to instruct the jury on all legal theories presented which are supported by the evidence. *Kauffman v. Schroeder,* 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977). In this case, it is true that the jury was clearly instructed with regard to the "equal consideration" standard. *See Clearwater v. State Farm Mut. Ins. Co.,* 164 Ariz. 256, 260, 792 P.2d 719, 723 (1990) (key consideration in third-party claim is whether insurer considered insured's interest equally with its own). That instruction, however, is geared more to a case in which the issue is the insurer's considered decision not to pay a claim than it is to a case like this one, in which the insurer admits that its negligence resulted in an untimely acceptance of a settlement offer. Thus, the instruction was incomplete and not specific to the facts of this case. The jury was not told that mere negligence or inadvertence could not constitute bad faith and that the insurer had to "intend the act or omission and must

form that intent without reasonable or fairly debatable grounds." *Rawlings,* 151 Ariz. at 160, 726 P.2d at 576.

The possibility that harm resulted from a failure to give a complete and specific instruction was greatly enhanced when counsel for Miel argued to the jury that:

> The one person you never heard say "mistake" was Judge Dairman. He gave you a list of factors that the law says you should consider in evaluating whether the insurance company was in bad faith. Mistake isn't on that list.

For this reason, we reverse the decision of the trial court and remand this case for a new trial.

### THE TRIAL COURT ERRED IN REFUSING TO ALLOW STATE FARM TO INQUIRE ABOUT WHY MIEL AND HER ATTORNEY SET A SHORT DEADLINE AND REFUSED TO EXTEND IT RETROACTIVELY

State Farm contends that the trial court erred in refusing to allow testimony regarding Miel's motives, or the motives of her attorney, in setting a time limit in her settlement demand, and then refusing State Farm's acceptance of the demand when it was only twelve days late. We acknowledge that a person injured by an insurer's policyholder occupies no contractual or fiduciary relationship with the insurer and may set a time limit for acceptance of a settlement offer, even if it is arbitrary or unreasonable. *Martin v. Hartford Accident and Indem. Co.,* 228 Cal.App.2d 178, 185, 39 Cal.Rptr. 342 (1964). On the other hand, an insurer that allows such a time limit to expire does not necessarily act in bad faith. *Id.*

The length of time that lapsed after the deadline before State Farm accepted the demand, and the reasons the Plaintiff adhered to the deadline are relevant to whether the insurer acted unreasonably. What is reasonable on the part of the insurer, however, must be judged in light of all the facts surrounding the demand. Even though

State Farm does not claim that the deadline was so short that it could not have been met, the reasons for a specific deadline may be relevant to whether the claimant has "set up" the insurer for a claim of bad faith. *See Borland v. Safeco Ins. Co. of America,* 147 Ariz. 195, 200–02, 709 P.2d 552, 557–59 (App. 1985). We find that the trial court erred in refusing to allow testimony regarding Miel's motives in setting a time limit in her settlement demand, and on remand such testimony should be allowed.

### THE CROSS–APPEAL

### THE TRIAL COURT DID NOT ERR IN RULING THAT AN INSURER MAY NOT BE SUED FOR NEGLIGENCE IN THE CLAIMS HANDLING PROCESS

 Since we grant a new trial, we must decide the issue presented in the cross-appeal. Miel argues that the trial court erred in ruling that an insured or the assignee of an insured may not sue an insurance company for a separate and independent claim of negligence in the way it handled the claim. As the supreme court recognized in *Rawlings v. Apodaca,* 151 Ariz. 149, 160 n. 6, 726 P.2d 565, 576 n. 6 (1986), this question has never been decided in Arizona.

An insurance company's duty to its insured, or to its insured's assignee, is defined by the terms of the policy and the implied covenant of good faith and fair dealing. *See id.* at 154, 726 P.2d at 570. If the company breaches its duty, its insured or the assignee may recover compensatory damages for breach of contract, or damages in tort if the insurer's actions rise to the level of bad faith. *See id.* at 158–60, 726 P.2d at 574–76 (discussing differences between action sounding in tort and action sounding in contract). In discussing the precise question of whether

mishandling a claim could give rise to a claim for negligence, the Florida Court of Appeals observed that "a cause of action based solely on negligence which does not rise to the level of bad faith does not lie." *DeLaune v. Liberty Mut. Ins. Co.,* 314 So.2d 601, 603 (Fla.Dist. Ct.App.1975).[1]

Miel relies on *Darner Motor Sales, Inc. v. Universal Underwriter's Ins. Co.,* 140 Ariz. 383, 682 P.2d 388 (1984), and *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App.1979), for the proposition that an insurer's mishandling of a claim can give rise to an independent cause of action for negligence. However, emphasis on these cases is misplaced. *Darner* dealt with a cause of action for an agent's negligent misrepresentation about the scope of the insurance policy, and *Songer* dealt with negligence in processing an application for insurance. *Darner,* 140 Ariz. at 385–86, 682 P.2d at 390–91; *Songer,* 124 Ariz. at 302, 603 P.2d at 929. Neither was a case where the claimant was suing after an insurance contract—an agreement which by its own terms created reciprocal rights and duties—had come into existence. We conclude that it is the contractual relationship which governs the conduct of the parties. Thus, no cause of action for mere negligence exists in a case like this one.

 Miel argues that the right to sue in negligence is protected by Article 18 section 6 of the Arizona Constitution which forbids the abrogation of the right to recover damages for injuries. Since no cause of action has ever been recognized for negligence in a case like this one, the court's ruling did not violate the constitution.

The judgment of the trial court is reversed and this matter is remanded for a new trial.

---

1. This does not necessarily mean, however, that there is no adequate recompense for an insurer's inadvertent mishandling of a claim. If the insurer's mishandling results in a breach of contract which leads to an excess judgment against the insured, the insured might be able to recover consequential damages to compensate for the excess judgment. *See Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. 607, 392 A.2d 576, 579–80 (1978); Jerry, *Remedying Insurers' Bad Faith Contract Performance: A Reassessment,* 18 Conn. L.Rev. 271 (1986). This point, however, was neither briefed nor argued in this case, and we do not decide it.