**Jesus ANGUIANO, an individual, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Defendant–Appellee.**

**No. 97–56704.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1999.

Memorandum Filed March 10, 2000.

Memorandum Withdrawn April 19, 2000.

Filed April 19, 2000.

William D. Chapman, Peterson & Chapman, Rancho Santa Margarita, California, for the plaintiff-appellant.

Gregory M. MacGregor, MacGregor & Berthel, Woodland Hills, California, for the defendant-appellee.

Before: FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

PER CURIAM.

Third party claimant Jesus Anguiano ("Anguiano"), a passenger injured in a car driven by the insured, Louis Romero ("Romero"), appeals the district court's grant of summary judgment in favor of Allstate Insurance Company ("Allstate"). Anguiano sued Allstate for breach of its duty of good faith and fair dealing to its insured Romero under an assignment from Romero to Anguiano. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the district court's grant of summary judgment de novo, we reverse. *See Paresi v. City of Portland,* 182 F.3d 665, 667 (9th Cir.1999).

## I.

On December 17, 1994, Anguiano was involved in an automobile accident while traveling as a passenger in a car driven by Louis Romero. Anguiano was rendered a quadriplegic as a result of the accident. At the time of the accident, Romero and his parents were insured by Allstate. The policy provided liability coverage of $15,000 per passenger, $30,000 per accident, and an additional $1,000 in medical payments coverage.

Shortly after the accident, Allstate determined that Louis Romero, its insured, was 100% responsible. Allstate also decided that the Romeros were potentially exposed to damages in excess of their policy limits due to the severe physical damage suffered by Anguiano. Therefore, Allstate initially made a full policy limits offer to Anguiano's mother, Graciela Campos ("Campos"), shortly after determining that the Romeros were exposed to liability in excess of their policy limits. Campos did not accept Allstate's offer, stating that she needed additional time to consider her options. Allstate failed to communicate any of the details of this conversation to the Romeros.

On April 21, 1995, Campos contacted Allstate's adjuster, Barbara Meza, and attempted to accept Allstate's full policy limits offer. Meza again reiterated that Allstate would be willing to settle the claim for $16,000; however, Meza injected additional terms into the agreement including the requirement that the settlement be structured in order to account for Anguiano's minority status. While it is clear that Campos did not accept those additional terms, her deposition testimony demonstrates that she counteroffered by indicating her willingness to settle the claim for $16,000 in cash. Allstate rejected that offer and failed to contact the Romeros regarding Campos' settlement offer.

Campos employed an attorney and on June 16, 1995, the attorney sent a letter informing Allstate that it could settle the claim for $16,000 but that the check must be received within five days. Meza responded to the letter two days after its expiration date. As a result, she was informed by Anguiano's attorney that the acceptance was not timely and thus they would not consummate a settlement with Allstate. Allstate also failed to inform the Romeros about any of the details of this second offer.

On August 24, 1995, Anguiano filed a complaint against the Romeros in California state court. On September 23, 1996, a stipulated judgment was entered against the Romeros and in favor of Anguiano in the amount of $8 million. The stipulation assigned all of the Romeros' claims against Allstate to Anguiano in exchange for a covenant not to execute the judgment against the Romeros.

On February 10, 1997, Anguiano filed a complaint against Allstate in California state court asserting the Romeros' bad faith claims against Allstate. The action

was subsequently removed to federal court on diversity grounds. On November 7, 1997, the district court granted Allstate's motion for summary judgment. This appeal followed.

## II.

■ Summary judgment is only proper if, upon viewing the evidence in the light most favorable to the party opposing the motion, we find that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *See Newman v. American Airlines*, 176 F.3d 1128, 1130 (9th Cir.1999). We reverse the district court's grant of summary judgment because a genuine issue of material fact exists as to whether Allstate properly handled Campos' two settlement offers.

■ California law implies a covenant of good faith and fair dealing in every insurance contract. *See PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 84 Cal.Rptr.2d 455, 975 P.2d 652, 654 (1999). This duty extends to an insurance company's insureds, in this case the Romeros. *See Moradi–Shalal v. Fireman's Fund Insurance Cos.*, 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58, 68 (1988) (In Bank). Anguiano's cause of action arises because the Romeros assigned their claims against Allstate to Anguiano. Allstate's treatment of Campos, therefore, is relevant only insofar as the company's actions towards Campos exposed the Romeros to liability over and above the limits of the Allstate policy.

Anguiano alleges that Allstate breached the covenant of good faith and fair dealing when it failed to inform the Romeros about the two settlement offers that Campos made. Allstate argues that it did not have a duty to inform the Romeros about the settlement offers because the offers failed to account for a Medi–Cal lien over any settlement proceeds paid to Anguiano, and were therefore defective. The facts regarding the Medi–Cal lien are in dispute. However, a defect such as this does not relieve the insurer of its obligation to forward settlement offers to the insured.

■ California law requires that an insurer " 'take into account the interest of the insured and give it at least as much consideration as it does to its own interest' " when evaluating settlement offers. *Walbrook Ins. Co. v. Liberty Mutual Ins. Co.*, 5 Cal.App.4th 1445, 7 Cal.Rptr.2d 513, 521 (1992) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 201 (1958) (In Bank)). As a result, the implied covenant of good faith and fair dealing imposes a duty upon insurers to give an "offer its intelligent and informed consideration; that the insurer advise the insured of any settlement offers, together with the results of its investigations; and that the insurer give equal consideration to the interests of its insured." *Cain v. State Farm Mutual Auto. Ins. Co.*, 47 Cal. App.3d 783, 121 Cal.Rptr. 200, 205 (1975). A breach of any of these obligations coupled with a refusal to settle within policy limits may render an insurer liable for any judgment against its insured, including any portion in excess of the policy limits. *See id.*

■ The insurer's duty to communicate a settlement offer to the insured is particularly important when there is a conflict of interest between the insurer and the insured. *See Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322, 331 (1980). A conflict of interest arises when "an offer to settle an excess claim is made within policy limits or when a settlement offer is made in excess of policy limits and the assured is willing and able to pay the excess." *Merritt v. Reserve Ins. Co.*, 34 Cal.App.3d 858, 110 Cal.Rptr. 511, 523–24 (1973).

In this case, a conflict of interest arose the moment that Campos made an offer to settle the claim within the policy limits because Allstate was aware that the Romeros were exposed to liability well beyond the policy limits. Acceptance of Campos' settlement offer, if properly structured, could have eliminated any liability exposure to the Romeros.

Construing the evidence in the light most favorable to the nonmoving party,

Campos made two separate offers to settle within policy limits.[1] However, Allstate failed to inform the Romeros about either settlement offer or any settlement negotiation details until August 24, 1995, the day that Anguiano filed a lawsuit against the Romeros in California state court. By that time, it was too late for the Romeros to exercise any influence over Allstate's decision to reject the settlement offers. *See Martin v. Hartford Accident and Indemnity Co.*, 228 Cal.App.2d 178, 39 Cal. Rptr. 342, 346 (1964) ("[A]n insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him.").

Under California law, Allstate's failure to inform the Romeros about Campos' settlement offers presents a genuine issue of material fact. Accordingly, we reverse the district court's grant of summary judgment.

**REVERSED.**

---

1. Campos introduced evidence that she made her first settlement offer during the April 21 conversation with Barbara Meza, and her second offer in the June 16 letter to Allstate. Allstate contends that Campos never made an offer during the April 21 conversation. However, for the purposes of summary judgment, we must construe the evidence in the light most favorable to the nonmoving party, the plaintiff in this case.