FILED

NOT FOR PUBLICATION

AUG 14 2015

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| TERRY BLANKENBAKER; GREG BLANKENBAKER; TRACI BLANKENBAKER; RAYMOND SHIPLEY; DENISE SHIPLEY, <br><br>         Plaintiffs – Appellants, <br><br>     v. <br><br> PROGRESSIVE CASUALTY INSURANCE COMPANY, a corporation, Erroneously Sued As Progressive Northern Insurance Company, <br><br>         Defendant – Appellee. | No. 13-55520 <br><br> D.C. No. 5:11-cv-01844-CJC-DTB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted March 5, 2015
Pasadena, California

Before:  MURPHY,** GOULD, and TALLMAN, Circuit Judges.

---

\*This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

\*\*The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals, Tenth Circuit, sitting by designation.

In April 1997, Terry Blankenbaker was driving a car on Interstate 40 near Barstow, California. Norma Blankenbaker, Raymond Shipley, and Denise Shipley were passengers in Mr. Blankenbaker's car. Because a sandstorm decreased visibility, Mr. Blankenbaker stopped his car behind a large truck. A car driven by Janet Ingram, in which Janet Jarrett was a passenger, rear-ended Mr. Blankenbaker's car. As a result of the collision, Mrs. Blankenbaker died and Mr. Blankenbaker, Mr. Shipley, Ms. Shipley, Ms. Ingram, and Ms. Jarrett suffered injuries. Ms. Ingram was insured by Progressive Casualty Insurance Company ("Progressive") with a policy limit of $30,000.

After failing to reach a settlement, Plaintiffs[1] filed suit against Ms. Ingram and were awarded more than $2.3 million in damages. Ms. Ingram assigned to Plaintiffs her right to bring this action in exchange for an agreement on the part of Plaintiffs not to execute the judgment against her. Plaintiffs then sued Progressive, alleging Progressive acted in bad faith when it rejected a proposed settlement offer[2] and failed to inform Ms. Ingram of the proposed settlement.

The district court granted summary judgment to Progressive, concluding Progressive did not act in bad faith when it rejected Plaintiffs' settlement offer.

---

[1]The term "Plaintiffs" refers collectively to Mr. Blankenbaker, the Blankenbakers' two children, and Mr. and Ms. Shipley.

[2]The record reveals Progressive rejected the proposed settlement offer because it did not include a release of claims by all individuals injured in the accident, i.e., it did not resolve potential claims Ms. Jarrett had against Ms. Ingram.

The district court concluded Progressive could not have accepted Plaintiffs' full-policy-limits settlement offer because it would have exposed Ms. Ingram to uninsured liability from Ms. Jarrett's claim for damages. Because accepting such an offer would have exposed Progressive to a bad faith claim from its own insured, Ms. Ingram, Progressive's refusal could not constitute bad faith. The district court determined that although Progressive failed to communicate the settlement offer to Ms. Ingram, that failure did not cause Ms. Ingram any harm. Undisputed evidence showed that Ms. Ingram was aware of the offer. Because Ms. Ingram urged Progressive not to settle, the district court concluded it was clear she would not have taken the opportunity to "add to the pot" to effectuate a settlement, an underlying rationale for the communication requirement.

Plaintiffs filed this timely appeal from the entry of summary judgment in favor of Progressive. On appeal, Plaintiffs limit their argument to the claim the district court erred in concluding Progressive did not act in bad faith in failing to timely communicate the settlement offer to Ms. Ingram.

This court reviews a district court's grant of summary judgment *de novo*. *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 426 (9th Cir. 2011). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court "must determine whether the evidence, viewed in a light most favorable to the non-moving party, presents any genuine issues of material fact

-3-

and whether the district court correctly applied the law." *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The record reveals genuine disputes of material fact as to whether Progressive complied with its duty to timely notify Ms. Ingram of the settlement offer made by Plaintiffs. *See Martin v. Hartford Accident & Indem. Co.*, 228 Cal. App. 2d 178, 183-84 (Cal. Ct. App. 1964) (describing parameters of duty to communicate). Even assuming such a breach, however, the district court was correct to grant Progressive summary judgment because no reasonable jury could find Progressive's assumed breach caused any damage to Ms. Ingram. *See* Ca. Civil Jury Instruction (CACI) 2333 (setting out elements of a bad faith failure-to-communicate claim in the insurance context, which elements include the requirement that a plaintiff demonstrate the insurer's actions were "a substantial factor in causing [his/her/its] harm"). The record evidence unequivocally demonstrates that Ms. Ingram was made aware of the settlement offer no later than May 22, 1997, when Plaintiffs' attorney contacted her directly and asked her to encourage Progressive to accept the offer. The record further demonstrates Plaintiffs' settlement offer remained open for at least another few days, and possibly much longer. The offer indicated, by its own terms, that it remained open until May 25, 1997. Furthermore, the record demonstrates Plaintiffs' attorney continued to negotiate with Progressive for several additional days, with no indication Plaintiffs' settlement offer was withdrawn. There is absolutely

nothing in the record indicating Ms. Ingram was interested in this offer or willing to "add to the pot"[3] by entering into separate negotiations with Ms. Jarrett in an effort to free up the entire Progressive policy to settle Plaintiffs' claims. Instead, all record evidence demonstrates Ms. Ingram: (1) did not think she was at fault in the accident; (2) did not want to settle with Plaintiffs and did not want Progressive to settle the suit; and (3) was not worried about a judgment in excess of policy limits because she did not have any assets and Plaintiffs' attorney had told her Plaintiffs were not, for that reason, interested in suing her.[4]

---

[3]*See Hartford Accident & Indem. Co.*, 228 Cal. App. 2d at 183-84 ("The company, having the right to select counsel to defend the insured, had the duty to communicate to him the results of any investigation indicating liability in excess of policy limits, and any offers of settlement which were made, so that he might take proper steps to protect his own interest. . . . An insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him.").

[4]The dissent faults us for relying on evidence from the time period after Progressive rejected Plaintiffs' settlement offer. As noted above, however, the record unequivocally demonstrates that negotiations were ongoing despite that rejection. In any event, the dissent fails to identify even a scintilla of evidence indicating Progressive's failure to provide Ms. Ingram notice prior to rejecting Plaintiffs' offer caused the alleged injury. Merely reciting the hypothetical actions Ms. Ingram could have taken if provided with timely notice does not create a material issue of fact as to causation. The dissent appears to conclude a material issue of fact exists as to causation merely because a material issue of fact exists as to whether there was a breach of the duty to communicate. Absent affirmative evidence on the causation element, the district court was correct to grant summary judgment to Progressive. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (holding that the party opposing summary judgment must come forward with significant probative evidence as to each element of the claim on which it bears the burden of proof).

Because the record unequivocally demonstrates Ms. Ingram was aware of the settlement offer during the relevant time period and was not remotely interested in settling the case, the district court was correct to conclude Progressive was entitled to summary judgment on the basis of lack of causation. The district court is, therefore, **AFFIRMED**.

Blankenbaker v. Progressive, No. 13-55520

GOULD, Circuit Judge, Dissenting

The full panel agrees that there are genuine and material fact issues whether Progressive complied with its duty to notify Ms. Ingram of the settlement offer made by Plaintiffs. The crux of the majority's decision to affirm is its conclusion that "no reasonable jury could find Progressive's assumed breach caused any damage to Ms. Ingram." This mistaken conclusion is understandable because nearly a month after Ms. Ingram arguably learned of the offer, she made statements, indicating a disinclination to accept the offer. But those statements came only after the offer expired. The majority's premise rests on an inference that with timely notice, she would have had the same attitude later expressed. It is incorrect to give the insurer inferences rather the non-moving party.

California law requires that an insurer "take into account the interest of the insured and give it at least as much consideration as it does to its own interest" when evaluating settlement offers. *Comunale v. Traders & General Ins. Co.*, 328 P.2d 198, 201 (Cal. 1958) (In Bank). This is particularly important when a conflict of interest arises, where "an offer to settle an excess claim is made within policy limits." *Merritt v. Reserve Ins. Co.*, 110 Cal. Rptr. 511, 523–24 (Ct. App. 1973). Communication of the settlement offer to the insured allows the insured to take

-1-

steps to alleviate that conflict of interest, as the majority recognizes. *See Martin v. Hartford Accident and Indem. Co.*, 39 Cal. Rptr. 342, 346 (Ct. App. 1964) ("[A]n insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him."). To give a few examples: Ms. Ingram might have added some of her own money to sweeten the pot to get rid of all claims. Or Ms. Ingram might have tried to persuade Ms. Jarrett, the passenger and other claimant, to drop her claims earlier in the course of events. Or Ms. Ingram might have told Progressive to accept the offer settling claims of the Blankenbakers, the passengers in the other car, while she would take her chances defending against any remaining claim of Ms. Jarrett. The majority concludes that Progressive's failure to inform Ms. Ingram of the settlement offer is of no matter because she would not have taken any such step. But that conclusion ignores the timeline of negotiations between Progressive and the Blankenbakers, assuming that what Ms. Ingram said after the offer had expired would have been her position if the offer had been timely communicated to her.

The record shows that Progressive rejected the Blankenbakers' settlement offer on May 13, nine days before anything in the record suggests that Ms. Ingram had even arguable knowledge of such an offer. The rejection of an offer terminates

that offer, *see, e.g*, *Beverly Way Associates v. Barham*, 276 Cal. Rptr. 240, 244 (Cal. App. 1990). It is true that settlement negotiations continued through May 28th, when the Blankenbakers rejected Progressive's proposed counter-offer. But the majority's conclusion that "nothing in the record" indicated Ms. Ingram was interested in the Blankenbakers' offer or was "willing to 'add to the pot'" rests on a conversation from nearly three weeks later, on June 19th. The Blankenbakers' original offer had expired before Ms. Ingram told Progressive that they should not settle and that she was unafraid of litigation. Whatever Ms. Ingram had done at that point, there were no options to mitigate the conflict of interest between her and Progressive.

One of our prior precedents is instructive. In *Anguiano v. Allstate*, we reversed summary judgment for an insurer, where the insurer belatedly tried to accept an expired settlement offer, and belatedly told its insured of that settlement offer. 209 F.3d 1167, 1169–70 (9th Cir. 2000). After a settlement offer expired, we reasoned "it was too late for the [insureds] to exercise any influence over Allstate's decision to reject the settlement offers." *Id.* at 1170. Following *Anguiano*, I would reverse the district court.

I respectfully dissent.